McKAY, Administratrix, &c., *v.* DRAPER.

The bailee of money deposited with him under a written agreement between A and B that it should be paid over to B upon a third person, C, expressing his satisfaction with certain documents, cannot defend an action for the deposit by B, on the ground that C, who waived the performance of the condition, was the mere agent of another person and had no interest in the matter of the agreement or in the money, and that such waiver was fraudulently made to enable B to obtain money to which he was not entitled.

The way for the bailee to protect the interest of the real principal is to bring an action of interpleader, or, after an action has been commenced against himself, to apply to have the principal substituted in his place as defendant, under § 122 of the Code.

APPEAL by the defendant from a judgment of the Supreme Court. The action was brought to recover the sum of five hundred dollars alleged to have been deposited with the defendant, by one Hunneville Vincent, to be paid over to the plaintiff's intestate upon the event, mentioned in the agreement in the following words :

"This agreement, made the 16th day of August, 1858, between James McKay, of the city of New York, and Hunneville Vincent, of the same place, witnesseth that, in consideration of good and valuable considerations, the said Vincent shall deposit with Simeon Draper the sum of five hundred dollars, to remain in his hands, as trustee for all the parties hereto, and which is to be drawn out of his hands at the end of forty days, when O. L. Baker, the attorney of the respective parties, shall examine the papers in the matters transacted this

day, and shall be satisfied that such papers are correct, and as represented by said McKay; and that when said Baker is thus satisfied, he shall sign an order for said McKay to get the money from said Draper. Dated August 16th, 1858.

"H. VINCENT,

"JAMES MCKAY."

The complaint alleges, and the fact was proved, that, after the expiration of the forty days, namely, on the 29th September, 1858, Vincent signed an instrument, waiving, in terms, that part of the agreement which required the order of Baker, and consenting and agreeing that Draper should pay over the money to McKay, the intestate, of which the defendant had notice; and that McKay and Vincent afterwards called, together upon the defendant, and requested him to pay the money to McKay, which he declined to do. The answer was a general denial to the complaint.

On the trial, before a referee, the defence set up seems to have been that Vincent had no personal interest in the subject of the agreement or in the money which was deposited, but acted therein as the agent of Moody M. Hall or of Anson Blake, and that Blake furnished the money; that the reference to Baker was intended for the protection of the interest of the real parties, and that it was fraudulently waived by Vincent for the purpose of enabling McKay to get the money to which he was not entitled. The defendant also attempted to show that the interest of Hall or Blake, and the motive of the arrangement, were made known to the defendant when he received the deposit. The agreement appears to have been signed by Blake, under the names Vincent and McKay, but whether it was originally placed there or was subscribed afterwards was a controverted point on the trial; and upon the other questions there was a large amount of contradictory testimony.

It appeared that McKay was possessed of certain abstracts of title and other papers, making what was called a *search*, respecting the title to ninety-eight building lots in the Central Park in the city of New York. None of these lots belonged to any of the parties above named, but it was supposed that

the papers showed title in those premises in certain other parties from whom they might be purchased by Hall; and with a view to the advantages to be derived from such a purchase, he was desirous of obtaining the papers which McKay had. But Hall was on bad terms with McKay, who, it was assumed, would not deal with him; and it was therefore arranged by Blake, as the friend of Hall, and Baker, who was the counsel of Blake, and Vincent, that the latter should act as the contracting party in the purchase of the papers from McKay. McKay's price, for his interest in them, was $1,000; and a further sum of $400 or $500 was claimed by one Fancher, who, it was said, had an interest in them. In pursuance of this agreement, Blake advanced the amount claimed by Fancher, and also $500 which was paid to McKay on account of the $1,000 which he asked. The remaining $500 was deposited with the defendant, under the agreement, in order that the character of the papers should be ascertained before this balance was paid over to McKay, and in order that it might be withheld if they did not appear to be what he had represented them to be; and this was to be determined by an examination to be made by Baker. The papers were handed over to Baker, when the agreement was signed. Baker had never approved of the papers, and the defendant offered to show that they were not what McKay represented them to be, but were defective and worthless for the purpose for which they were wanted; but the evidence was excluded, and the defendant excepted. The money mentioned was advanced by Blake for the benefit of Hall, who gave security for its repayment by way of lien on his expected interest in the lots. The testimony is very incoherently stated in the case, which seems to be a copy of hasty minutes taken on the trial; and some of the matters above stated were controverted by portions of the testimony.

The finding of the referee stated the existence of the agreement between McKay and Vincent, as above set forth, and that the $500 was deposited with and received by the defendant, with knowledge of and pursuant to such agreement, and

that he refused to pay it to McKay, when, after the expiration of the forty days, he was shown the paper signed by Vincent, waiving the agency of Baker, and when it was demanded of him. As to the signature of Blake to the instrument, the finding said that he appeared to have signed it under the signatures of Vincent and McKay, but that the weight of evidence seemed to show that his name was placed there after these persons had signed it; but the referee said he preferred to place his decision, as to the effect of Blake's signature, upon the ground that he was not a party to the agreement, and that his signature did not make him a party to it or interested in it. He found that the money, which was paid and deposited, was furnished to Vincent by Blake, and that the latter was present when the agreement was executed. The finding further stated that the referee rejected a large amount of testimony offered by the defendant, to show the incorrectness of the papers referred to in the agreement, because the defendant had not sought to interplead, under section 122 of the Code, and because the pleadings do not set out any interest of Blake in the deposit or in the transaction referred to, and that he had not deemed it important to determine whether Vincent was acting *as the agent of another party, or not,* or whether the plaintiff knew it, because it appeared on the face of the agreement that Vincent was a principal. After stating that Vincent did not obtain the money from Blake unlawfully, the finding, as to the facts, concludes: "Under these circumstances, no connection being alleged or shown betweeen the defendant, the bailee of the money, and Mr. Blake, I am clearly of the opinion that the defendant would not only have been justified in paying over the money as Vincent directed, but was, moreover, bound to do so." As matter of law, he found that Blake was not a party to the agreement, or interested in the transaction; that Vincent was authorized to waive the agency of Baker, and that the plaintiff was entitled to recover the amount with interest. No exception was taken to the decision of the referee. McKay, who was the original plaintiff, died during the pendency of the appeal to the Supreme Court at gen-

eral term, and his administratrix was substituted. The judgment on the report having been affirmed at the general term, this appeal was brought by the defendant.

*Samuel G. Glassey*, for the appellant.

*J. H. Reynolds*, for the respondent.

MARVIN, J. There is no exception to the findings or decisions of the referee; but there are numerous exceptions to the rejection of evidence offered to show the consideration of the agreement between the plaintiff and Vincent: that Vincent was a mere agent of Blake, or Blake and Hall: that the money belonged to Blake: that Vincent acted in fraud of Blake's rights in giving the order for the money; and that the plaintiff coöperated in such fraud, without connecting Draper with these facts. Such offered evidence was properly excluded. There was no privity between the defendant and Blake, or any persons other than McKay and Vincent, and the defendant could not set up title in any other person in defence so long as he retained the money, or make himself a party to controversies between his bailors and third persons. It is a general rule that an agent cannot defend against the action of his principal by setting up the title of others, so long as he retains the property. If he chooses to take the responsibility of delivering the property to a third person who claims it, and such person has a legal right to the property, he may do so, and show this in defence. (1 Pars. Cont., 677, *et seq.*, and cases cited in the notes.)

In a proper case, an action of interpleader can be maintained. And the Code has provided a more simple remedy, by which the defendant in this case, after the action was commenced, and before answer, could have applied to the court for an order to substitute Blake in his place, and discharge him from liability on depositing in court the money. The court, in its discretion, can make such order. (Code, § 122.)

There is another answer to this appeal. There was no issue made by the pleadings under which the defendant was entitled

to make the defence claimed to be valid.    The judgment must be affirmed.

DAVIES, WRIGHT, SELDEN, EMOTT and BALCOM, Js., concurred.

DENIO, Ch. J., (dissenting.)    If the money which was deposited with the defendant to be paid, conditionally, to McKay, the plaintiff's intestate, was the money of Vincent, who deposited it, it was, of course, competent for him to waive the condition; and having waived it, it was the defendant's duty to pay it to McKay.   If it was really the money of Vincent, he was alone interested in the question which was referred to the determination of Baker; and it was not for the defendant to object that he chose to dispense with an agency which was provided for his own security.   But if it was the money of Hall or of Blake, and they, or the one whose money it was, in connection with Vincent, agreed that Vincent should represent the owner of the money in making the deposit, then it was a fraud in Vincent to attempt to waive the condition on which it was to be paid to McKay, and the depositary could not properly pay it to him, unless the fact, if it was a fact, that McKay was ignorant of the interest of Hall or Blake, and treated with Vincent in making the contract as the real principal, and believed him to be such, would make a difference.   If we suppose the case to have been that Blake, who really advanced the money, and who was to have a lien upon the property supposed to be in some manner represented by the documents, employed Vincent to enter into the agreement with McKay, the latter not being aware of the interest of Blake, and that Vincent fraudulently dispensed with the examination of the papers which was to have been made by Blake in order to enable McKay to receive the money, the question arises whether the interest of Blake can now be set up by the defendant to avoid its payment pursuant to Vincent's consent and direction.   This is the case which the evidence tends in some degree to prove; and it is essential to the disposition of

the appeal and the ultimate decision of the action that the law upon such a state of facts should be determined.

If an agent make a contract with another without disclosing his agency, the party so dealing with the agent will be protected in any advances he may make to him, and generally in anything he may do pursuant to the contract, until he is made acquainted with the interest of the principal. But the real party in interest is not wholly precluded from asserting that interest: he may generally have the same remedies upon the agreement as though it had been made in his name, where he asserts his rights before the other party has committed himself by some dealing with the agent which cannot be retracted without injury to him. This doctrine was applied many years ago to a case very similar to the present. The defendant, the owner of an estate which he desired to sell, caused it to be advertised for sale, the notice stating that it was situated about one mile from Horsham. One Harting, an agent of the Duke of Norfolk, entered into a written agreement in his own name, as principal, with the defendant's agent for the purchase of the property, which was to be conveyed to Harting on or before a day mentioned. Harting made a deposit with the defendant of 300 guineas; and it was not until after all this was done that he stated to the defendant's agent that he had made the purchase for the plaintiff, the Duke of Norfolk. It turned out that the premises were three or four miles, instead of one mile, from Horsham; which circumstance seems to have materially affected its value. The action was by the Duke, to recover the deposit. The defendant's counsel objected that it ought to have been brought in the name of Harting, who alone appeared as the purchaser and ought to be considered as the principal. Lord ELLENBOROUGH, before whom the case was tried, said that the question was, whose money was paid as a deposit. If it was the money of a principal, paid through the medium of an agent, it may be recovered back by the principal, upon the contract upon which it was paid being rescinded. He therefore thought the action rightly brought in the name of the present plaintiff. The plaintiff obtained a verdict. A

new trial was moved for, but the court refused a rule to show cause, holding the direction right. (*Duke of Norfolk* v. *Worthy*, 1 Campb., 337.) The case is referred to with approbation by the former Supreme Court in this State, in *Vischer* v. *Yates* (11 Johns., 23), the opinion being delivered by the then Chief Justice, KENT; and that case itself is another application of the principle referred to. The plaintiff put $500 into the hands of an agent to bet for him upon the then approaching election for Governor. Such a wager was accordingly made with a third person, and the money thus intrusted to the agent, with an equal amount furnished by the other party to the wager, was put into the hands of the defendant to be paid to the party whom the event should determine to be the winner, and the defendant signed a writing to that effect. The agent did not disclose the name of his principal, though he said he was acting for others. The election resulted against the candidate in whose favor the plaintiff's money was staked; and after the election returns were received he claimed that the bet was illegal: caused notice to be given to the defendant that the money belonged to him: demanded it, and brought the action to recover it. It was objected on the trial that the agent could alone maintain the action; but the plaintiff had a verdict. The court held the bet to be unlawful and void. As to the objection that the contract was with the agent, they said that the case of *The Duke of Norfolk* v. *Worthy* was in point, and that the principle contained in it appeared to be solid: and judgment was given upon the verdict. The doctrine is not limited to cases where the action of the principal proceeds upon a disaffirmance of the contract. The principal may equally sue upon the contract itself, as is often done where it was made by a factor for an undisclosed principal. The agent himself has a qualified right to sue on such a contract, but the principal will still have the power of superseding the factor's right by suing in his own name, or by taking any other proceedings whereby it becomes manifest that he intends to consider the other contracting party as his debtor. Thus, if a factor sells goods in his own name, without disclosing his

principal, and, before he has sued the vendee for the price, the latter takes steps for recovering the debt directly from the vendee, such debt will then be considered to be due to the principal, in the same manner as if the sale had been made personally by him in the first instance; and after the intervention of the principal, the factor will cease to have any right to sue. (Russell on Factors, 245; Story on Agency, § 161.) Our own books furnish several cases where the doctrine has been applied. Thus, in *Beebee* v. *Robert* (12 Wend., 413), an agent had purchased cotton without disclosing the name of his principal, and it was held that the latter could maintain an action on a warranty of quality embraced in the contract. In *Spencer* v. *Field* (10 id., 88), the principle was conceded by the court, but it was held not to apply where the contract of the agent was under seal. In *Hogan* v. *Shorb* (24 id., 458), it was held that although the principal could sustain an action for goods sold by his factor in his own name, yet that the defendant was not thereby deprived of his right to set off a debt against the factor existing before the purchase. The rule has been constantly followed in the modern English cases. A proctor was allowed to recover for business done for the defendant by his clerk, although the defendant apprehended that the clerk was the principal, he acting as the principal and never disclosing the name of his employer, no prejudice having arisen to the defendant from the concealment. (*Grojan* v. *Wade*, 2 Starkie, 443.) In *Skinner* v. *Stocks* (4 Barn. & Ald., 437), where a quantity of oil was sold by one of several part owners, the purchaser not knowing that any other person was interested, the action, to recover for not accepting and paying for the property, was sustained in the name of all the owners, the court saying that it might be maintained either in the name of the person with whom the contract was actually made, or in the name of the parties really interested. In *Humphrey* v. *Lucas* (2 Carr. & K., 152), it was decided that if a broker enter into a contract for an undisclosed principal, the latter may sue on such contract in his own name, notwithstanding a rule of the Exchange to the effect that a contract made

by a broker for an undisclosed principal shall be regarded as the contract of the broker only. *Humble* v. *Hunter* was an action on a charter-party, signed by the son of the plaintiff, in which he described himself as "owner of the good ship or vessel called 'The Ann.'" The court, fully admitting the general rule as I have stated it, held that it did not apply to such a case; Lord DENMAN, Ch. J., saying that the defendant had a right to the benefit he contemplated from the character, credit and substance of the party with whom he contracted. (12 Adolph. & E., 310.) Whatever may be thought of the weight of the distinction, the principle is clearly recognized. See, also, *Clay* v. *Southern* (14 E. L. & Eq., 533), and *Londesborough* v. *Mowatt* (28 id., 119).

If Blake (supposing him to have been the principal in this transaction,) had sued the defendant on this deposit, and had shown that Baker, the referee, had decided against the documents in the terms of the submission, it could not, according to the principle established by these authorities, have been objected that he was not the proper party to bring the action, and he would undoubtedly have been entitled to recover the money.

It was one of the terms of the contract which Vincent entered into with McKay, that the papers which were purchased should be submitted to the examination of Baker, and should be approved by him before the balance of the purchase price should be paid. Assuming that Vincent was in fact the agent of Blake, this provision was for the benefit and protection of the latter. In cases falling within the rule which has been referred to, where the principal of the agent who made the contract—the actual party in interest on that side—appears and asserts his interest, the power of the agent is at an end. The other party can no longer deal with him upon the footing of a principal, except in the execution of some provision of the agreement which was to be made to him personally. What was attempted here was to change its terms so as to deprive the principal of an important safeguard contained in the contract itself. It was fraudulent for Vincent to do this, and McKay can claim no advantage from it. He is entitled to

McKay v. Draper.

the complete execution of the agreement; according to its terms and spirit; but if he would obtain the balance of the consideration, contrary to the agreement, and by a waiver of one of its provisions, he needs, and must have, the assent of the party in interest whom Vincent represented, and whose money must be employed to pay that balance.

It appears, from some of the objections to the testimony, and from the referee's finding, that it was supposed to be necessary for the defendant to answer specially, setting up the evidence upon which his defence rests. His answer is a general denial of the case made by the complaint. But the material allegation of the complaint is, in substance, that Vincent's money was in the hands of the defendant, and that Vincent, being such owner of the money, had waived the condition upon which it was to be paid to McKay. Proof that Vincent was only a nominal party; that the money was not his, but belonged to his employers; is a virtual contradiction of the plaintiff's case, and comes fairly within the denial of the answer. The defence set up was not by way of confession and avoidance, such as payment, an award, or the like, but was a denial that the plaintiff ever had a cause of action against the defendant. (*Brazill* v. *Isham*, 2 Kern., 9; *McKyring* v. *Bull*, 16 N. Y., 297.)

There was no exception to the referee's report, and the appellant must consequently rely upon the exceptions taken in the course of the trial.

It follows, from what has been said, that it was competent for the defendant to prove that Vincent was merely an agent in making the contract concerning the documents, and that the parties really interested were Blake and Hall, or one of them, and that the money was not Vincent's money, but theirs. If the defendant was fairly permitted to make that proof on the trial, there is no error in the judgment of which he can now complain, though we should think that the question of fact was incorrectly decided. In the early part of the trial, the following questions were put by the defendant's counsel to McKay, when under examination as a witness in his own

behalf: "From whom did you have a promise, or with whom did you negotiate, that you should receive the $1,000 you speak of?" This related to the money to be paid for the documents. "When you negotiated with Vincent, at any time did you expect that you was to receive directly any money from him?" "Was not the agreement of yourself, Vincent, Blake and Baker, at the time, that that money should be paid to Mr. Blake, if the papers were not as represented by you?" "Why was it that an order was to be obtained from Mr. Baker before Draper could pay over this money?" "Did you not know that this money deposited with Mr. Draper was Mr. Blake's at the time it was deposited?" "Did not Mr. Baker and Mr. Blake plainly tell you, at the time, that they would not pay it to you; that it should be deposited, and if everything turned out as it was represented, they would give you this additional $500?" When it is borne in mind that all the parties, McKay, Vincent, Blake and Baker, were present when the agreement for the deposit was signed and the $500 was paid, and the remaining $500 was handed by Blake to Baker to be deposited with the defendant, it will be apparent that the inquiries were pertinent to show the relation between Blake and Vincent, in respect to the transaction, to be that of principal and agent. Yet the questions were severally excluded by the referee, on the plaintiff's objection, and there was an exception in each instance. The answer made on the argument to the allegation of error in these rulings was that the parties were subsequently allowed to go fully into the matters thus ruled out, and that the error was thereby cured. If this were so, I think the error could not now be complained of. The circumstances were these: McKay and Baker were afterwards severally examined, not before the referee, but out of court, and their depositions brought forward at an adjourned day. The case states that this written testimony of Baker was received subject to all legal objections, and that of McKay was stipulated to be read with the same effect as if the witness had been present, subject, however, to all proper objections. The referee having excluded testimony calculated to show that

Vincent acted as the agent of Blake, it is to be presumed, in the absence of any evidence of a change of views on his part, that he only considered and acted upon such portions of the written testimony as were not obnoxious to the objections which he had thus allowed. The fact, therefore, that the excluded topics were treated of in this written testimony will not avoid the exceptions which had been taken, since it seems plain that the defendant never had the benefit of the testimony upon these points. This view is made quite clear upon reference to that part of the finding of the referee in which he says: "I have not deemed it important to determine the question, arising on the trial, whether Vincent, in this transaction, was acting as the agent of another party or not, or whether the plaintiff knew this; for Vincent, upon the face of the written agreement made August 16th, executed in Mr. Blake's presence, appears to be one of the principals." If the referee thought that the question whether Vincent acted for himself or as an agent was immaterial, or incompetent to be proved by the defendant, he certainly did not give any heed to the testimony upon that point which was brought before him under a stipulation or ruling that he was to receive only such parts as he considered competent. The finding, though not excepted to, may be properly resorted to for the purpose of explaining what might otherwise appear to be equivocal in the case. It shows in this case that all the testimony on the subject of Vincent's agency was thrown out, as immaterial to the merits of the case.

I am, therefore, of opinion that the exceptions to which I have referred were well taken; that the judgment should, on that account, be reversed, and that a new trial should be ordered.

ROSEKRANS, J., expressed no opinion.

Judgment affirmed.