## COMMERCIAL BANK OF CLYDE *v.* THE MARINE BANK.

### March, 1867.

A bank receiving negotiable paper from another bank for collection, obtains no better title thereto or to its proceeds, than the remitting bank had, unless the collecting bank becomes a purchaser for value, without notice of any defect of title.

Although it be shown to have been the usage of the parties to receive and collect drafts and notes, and credit each to the other the proceeds when collected, and make settlements from time to time, the mere fact that the collecting bank delayed drawing the amount due it from the remitting bank, by reason of its having possession of the draft for collection, does not entitle the collecting bank to hold the draft as against the true owner.[*]

The Commercial Bank of Clyde, New York, sued the Marine Bank of Milwaukee, Wisconsin, in the supreme court, for money received.

The plaintiffs were owners of a draft payable in Milwaukee, which they indorsed, and sent through Lee & Co., bankers, of Buffalo, for collection. Lee & Co. indorsed it, and sent it to the defendants, a Milwaukee bank, who were their correspondents, and between whom and them commercial paper was constantly remitted and received for collection.

On the failure of Lee & Co., the defendants claimed to hold the proceeds of this draft, for payment of balances due them on their account with Lee & Co.

The details of the facts were as follows:

The plaintiffs were a corporation doing business at Clyde, in this State, and the defendants were also a corporation, doing business at Milwaukee, Wisconsin.

In April, 1857, Miller, Powell & Co., drew a draft on one Crocker, of Milwaukee, for four hundred and eleven dollars and ninety-six cents, payable at sixty days, to the order of the plaintiffs, and delivered it for value to the plaintiffs. The plaintiffs indorsed and sent said draft to John R. Lee & Co., who

---

[*] To similar effect, Hoffman *v.* Miller, 9 *Bosw.* 334; see also Dod *v.* Fourth National Bank, 59 *Barb.* 265; Lindauer *v.* The same, 55 *Id.* 75; Dickerson *v.* Wason, 47 *N. Y.* 439; reversing 54 *Barb.* 230.

were bankers at Buffalo, for collection, and on April 11, Lee & Co. indorsed and sent it to the defendants for collection.

On May 14, 1857, Lee & Co. failed, and have ever since been insolvent.

The defendants and Lee & Co. had each been, from about April 1, 1856, to May 14, 1857, the commercial and banking correspondents and agents of the other, and during that time had done business, each for the other, in the collection of drafts and commercial paper, and otherwise. It was their usage and custom to receive and collect drafts and notes, and to credit, each to the other, the proceeds of such drafts and notes when collected, deducting therefrom the charges and expenses of collection. Accounts current were exchanged from time to time between them, and settlements made in accordance with such custom and usage.

The draft in question was received by the defendants on the 13th, and accepted by Crocker on April 14, 1857.

Between April 14 and May 14, the defendants, in the usual course of business, sent to Lee & Co., for collection, a certificate of deposit, issued by the International Bank of Buffalo, for two hundred dollars, and a check drawn on said bank for sixty-three dollars and twenty-five cents, both of which were collected by Lee & Co., and placed to the credit of defendants; and they also collected between those dates a draft, which had in like manner been previously sent them for collection, for one hundred and seventy-five dollars, which was also placed to the defendants' credit. And between those dates the defendants had collected and placed to the credit of Lee & Co. paper forwarded by them, in the usual course of business, for collection, to the amount of two hundred dollars.

On June 3, 1857, the defendant collected the said Crocker draft of the drawee, and credited the amount of such collection, less one per cent. charges (being four hundred and seven dollars and eighty-five cents), to Lee & Co. On the day before the payment of the draft, Lee & Co. were indebted to the defendants in the sum of seven hundred and forty-three dollars and seventy cents, leaving a balance, after deducting the proceeds of the draft, of sixty-five dollars and eighty-five cents. On June 9, defendants collected a draft—which they had re-

ceived from' Lee & Co. for collection, as usual—the net proceeds of which, amounting to sixty-seven dollars and twenty-seven cents, after paying a portion thereof which was claimed by a third party, were placed to the credit of Lee & Co. On this latter day plaintiffs gave defendants notice of their claim to, and demanded payment of, the proceeds of the Crocker draft, and defendants refused to pay the proceeds or any part thereof, to the plaintiffs.

Evidence was given tending to show that, after the middle of March, the defendants did not intend to allow much balance in the hands of Lee & Co., beyond what paper defendants had from them about to mature, though, both before and after April 14, paper was sent to them in order to supply a fund on which defendants might draw for such small amounts as were occasionally called from Buffalo; also that paper was sent and the prior balance allowed to remain, after April 14, on the faith of the Crocker draft (which defendants believed to belong to Lee & Co.) and the other paper, for the other reason above stated.

Upon the trial the plaintiff asked the court to charge the jury that, unless the defendants gave Lee & Co. some new credit, or made advances, or parted with some value on the credit of the Crocker draft, the plaintiffs were entitled to recover, which was refused. And the jury were instructed, that if the defendant had transmitted any paper to Lee & Co. between April 14 and May 14, on the faith of the Crocker draft, *or* if they delayed the amount due them, by reason of having this draft, the plaintiffs were not entitled to recover; and that upon the evidence the defendants were entitled to a verdict: and thereupon the court directed a verdict for the defendants.

*The supreme court*, at general term, where the exceptions were ordered to be heard in the first instance, denied a motion for a new trial, and ordered judgment for the defendant, without, however, rendering any written opinion.

*A. P. Laning*, for plaintiffs, appellants;—Cited, Coddington *v*. Bay, 20 *Johns.* 637; Rosa *v*. Brotherson, 10 *Wend.* 86; Stalher *v*. McDonald, 6 *Hill*, 93; Youngs *v*. Lee, 12 *N. Y.* (2 *Kern.*)

551; Scott *v.* Ocean Bank, 23 *N. Y.* 289; McBride *v.* Farmers' Bank of Salem, 26 *Id.* 450.

*Benjamin H. Austin, Jr.,* for defendants, respondents;—Cited Allen *v.* Culver, 3 *Den.* 284; 1 *Pars. on Bills,* 221; Youngs *v.* Lee, 12 *N. Y.* (2 *Kern.*) 551; White *v.* Springfield Bank, 3 *Sandf.* 222; Bank of Sandusky *v.* Scoville, 24 *Wend.* 115; Iron Works *v.* Smith, 4 *Duer,* 362; County Bank *v.* Albany City Bank, 7 *N. Y.* (3 *Seld.*) 459; McBride *v.* Farmers' Bank, 25 *Barb.* 657; 26 *N. Y.* 470; Bank of Metropolis *v.* New Eng. Bank, 1 *How. U. S.* 234; Sweeny *v.* Easter, 1 *Wall.* 166; Nichols *v.* Goldsmith, 7 *Wend.* 160; Goodrich *v.* Walker, 1 *Johns. Cas.* 251; 2 *Salk.* 244; *Grah. on New Trials,* 301, 310; *Story on Agency,* § 419.

This action might have been tried by the laws of Wisconsin, Hyde *v.* Goodnow, 3 *N. Y.* (3 *Comst.*) 267; *Pars. on B. & N.* 218–224. Under those laws the judgment should be affirmed.

J. M. PARKER, J. [After stating above facts.]—Without reference to the question whether this judgment could stand, upon the decisions of the supreme court of the United States, it is clear that it is not supported by the decisions of the courts of this State.

It may be remarked that it is not so certain that the defendants transmitted any paper to Lee & Co. for collection, on the credit of the draft in question, as to authorize the court to assume it as a fact against the consent of the plaintiffs. But there is no pretense that paper to the whole amount of the proceeds of the draft was so sent; and even if the fact were admitted that the paper claimed to have been so sent was sent upon the credit of the draft, and if, as matter of law, it be admitted that defendants had the right to retain, from the proceeds, an amount equal to the amount of paper so sent and collected, still the plaintiffs were entitled to recover the difference between the amount of the proceeds of the draft and the amount of paper so sent and collected. Under the decisions of this court, the defendants could not hold any portion of such proceeds to satisfy balances which they had suffered to lie in the hands of Lee & Co. on the credit of the draft.

This was very distinctly held in McBride v. Farmers' Bank, 26 *N. Y.* 450. The doctrine of that case is, that a bank receiving from another notes for collection, obtains no better title to them, or their proceeds, than the remitting bank had, unless it becomes a purchaser for value without notice of any defect of title; and that it is not a purchaser for value, by reason of its having a balance against the remitting bank for which it had refrained from drawing, in reliance upon a course of dealings between the banks to collect notes for each other, each keeping an open account for such collection, treating all the paper sent for collection as the property of the other, and drawing upon the proceeds for balances at pleasure.

It is to be observed that the course of dealings between Lee & Co. and the defendants did not authorize either to draw upon the other for the amounts of the paper sent, until collected; the proceeds, after deducting the charges for collection, were alone credited, and no notes or drafts ever entered into their accounts until collected. There is, then, no ground for saying that the draft in question ever belonged to the defendants. It was said in McBride v. Farmers' Bank, " According to the decisions of the courts of this State, Paul & Pritchard could have set up any defense to their notes in the hands of the defendants, that existed in their favor as against the Canal Bank, or the Farmers' and Mechanics' Bank; and the defendants had no title to the notes that enables them to retain the money they received thereon as against the true owner."

Precisely so in this case. Crocker could have set up any defense to the draft in the hands of defendants that existed in his favor as against Lee & Co. or the plaintiffs, so that the defendants had no title to the draft that enables them to retain the money they received thereon against the true owner. Even as between the defendant and Lee & Co., no title to the draft ever passed to the defendants. If it had not been paid, and had gone to protest, there is nothing in the case which would have entitled the defendants to maintain an action upon it against Lee & Co.

If the defendants had been at liberty, in pursuance of the general arrangement between them and Lee & Co., to credit the draft on receiving it, and had done so, to form a fund upon

which Lee & Co. were entitled to draw immediately, as was the case in Clark *v.* Merchants' Exchange Bank, 2 *N. Y.* (2 *Comst.*) 380, then the defendants might, as against Lee & Co., have claimed ownership of the draft and of its proceeds. In that case this distinction is made the criterion. The court says: "The material question, as stated by the court below, is whether the bill in question was transmitted [by the plaintiffs who were the owners] to Smith & Co. [their business correspondents] for collection, merely, or was to be credited to the plaintiffs, when received by the former, whether collected or not." The court below held that it was not, by the course of dealings between the parties, to be credited until collected, while this court held that the proper inference from the facts proved was, that it was to be credited when received. "The error of the learned judge, I apprehend," says Judge GARDINER, "consists in the assumption that nothing was credited to Clark & Co. [the plaintiffs], in the course of business, until collected. This inference is opposed to the testimony of the only witnesses who speak as to the nature of the business, and mode of transacting it, and to instructions of the plaintiffs in the letter of May 15." And it was because of that error that the judgment of the court below, which gave the proceeds of the bill to the plaintiff, was held erroneous, and reversed.

The case of Scott *v.* Ocean Bank, 23 *N. Y.* 289, is based upon the same distinction. These cases, I think, warrant the conclusion that the defendants, having acquired no title to the draft itself, cannot claim to hold, as against the true owner, any portion of the proceeds.

In regard to the case at bar, however, it is sufficient, and all that I am authorized by the court to say is, that the court below erred in assuming that defendant had transmitted any paper to Lee & Co., on the credit of the draft, and holding that if defendants had delayed drawing the amount due them by reason of having this draft, the plaintiffs were not entitled to recover.

The judgment of the supreme court must therefore be reversed, and a new trial ordered.

All the judges concurred in the result.

Judgment reversed, and new trial ordered, costs to abide event.