LINDAUER *vs.* THE FOURTH NATIONAL BANK OF THE CITY OF NEW YORK.

Where one bank receives from another a draft belonging to a customer, for collection merely, without advancing any money or giving any credit thereon, it has no title to the draft which will authorize it to retain the moneys received thereon, as against the true owner, on account of overdrafts of the remitting bank.

A bank, receiving from another negotiable paper for collection, obtains no better title to it, or the proceeds, than the remitting bank had; unless it becomes a purchaser for value, or makes new advances on the faith of it, without notice of any defect of title.

And it does not become such purchaser, or make such advances, by reason of its having a balance against the remitting bank, for which it had refrained from drawing, or from having made further advances after the receipt of the negotiable paper.

APPEAL from a judgment entered upon the report of a referee.

On the 6th of May, 1867, the plaintiff delivered to the First National Bank of New Orleans, for collection, a draft on A. Belmont & Co., New York, for $440.15 in gold, which said bank undertook to collect and pay to the plaintiff, less commissions. The New Orleans bank forwarded the same to the defendants, who received it on the morning of May 11th, and collected it. The defendant was corresponding bank of the New Orleans bank, which had overdrawn its account on May 11, 1867, under an agreement that the defendant would allow the New Orleans bank to overdraw its account, and the defendant would hold its remittances for collection as collateral for any such overdraft; and these overdrafts had been allowed on the faith of such agreement, and of advices of remittances in which were included the draft in question, until the receipt of which the defendant had refused to make further advances, but after receiving which the defendant did make further advances. The balance still due the defendant was over $50,000, and it claimed the right to apply the proceeds of this draft against this balance, and refused payment

thereof to the plaintiff. Whereupon this suit was brought, and was referred to D. P. Ingraham Jr., Esq., who found that the plaintiff was the owner of the draft, and that the defendant had made no advance to the New Orleans bank, upon the same, or upon the credit thereof. And he reported in favor of the plaintiff for $609.40, (the currency value of the gold,) and from the judgment entered on his report the defendant appealed.

*Livingston K. Miller*, for the appellant. I. There was no privity between the plaintiff and defendant. The defendant was not the agent of the plaintiff, but of the New Orleans bank, which in its turn was the agent of the plaintiff. The defendant owed no duty to the plaintiff. This, under the decisions, is a fatal objection to the plaintiff's right to recover. (*Costigan* v. *Newland*, 12 *Barb.* 456. *Denny* v. *The Manhattan Co.*, 2 *Denio*, 115; *affirmed in Court of Errors*, 5 *id.* 639. *Colvin* v. *Holbrook*, 2 *Comst.* 126. *Montgomery County Bank* v. *Albany City Bank*, 3 *Seld.* 459.) And in *West* v. *American Exchange Bank*, (44 *Barb.* 175,) it is conceded that it would have been a good point if it had not been waived by the answer.

II. The next question in this case is, had the defendant a right to retain the proceeds of the draft in question as against the debts of the New Orleans bank to it? Under the decisions of the United States courts, this right could not be questioned. It could be held under the general bankers' lien for antecedent advances, even had there been no advances, or no credit given on the faith of said remittances. (*Bank of Metropolis* v. *New England Bank*, 1 *How. U. S. Rep.* 234. 6 *id.* 212. *Swift* v. *Tyson*, 16 *Peters*, 1.)

III. This ruling has not been followed to its full extent in our State courts, and the rule as established by the various decisions in this State seems to be, that in order that the receiving bank may retain moneys so received, it must be made to appear, either 1st, that the receiving

bank has given absolute credit to the remitting bank for the draft when received, without waiting for its collection; or, 2d, must have paid something, parted with some value on the faith of it. We claim that both have met in this case. The defendant passed this draft at once to the credit of the plaintiff as cash. " Q. Were the remittances inclosed in letter of May 6, Ex. No. 1, credited to the New Orleans bank when received, or after collection? A. When received." See also Ex. No. 2. And they did make payments on the faith of it. " We did pay the drafts of the First National Bank of New Orleans all day on May 11, 1867, to the extent of $13.578." The defendant had refused to make advances until advised by telegram of the remittances, but did thereupon advance and increase the indebtedness of the New Orleans bank.

IV. On these undisputed facts, it remains to be seen if the propositions above stated are the law of this State as applicable to this case. The first case we refer to, *Stalker* v. *McDonald*, (6 *Hill*, 93,) is the decision of the Court of Errors, with but one dissenting voice. It is cited for the general principle laid down in it, and because it is referred to with approval by the courts in some of the other cases cited. It decides that an innocent holder of negotiable paper received in the usual course of trade, for a valuable consideration, though received from a person having no title, will be protected as against the true owner; otherwise, if the holder parted with no value. In *Clark* v. *The Merchants' Bank*, (2 *Comst.* 380,) the court held that where drafts for collection had been transmitted to a banking house, who received and credited them, and the parties remitting the drafts drew against them, the title to the drafts so credited had passed, although the drafts drawn against them were not paid, the parties who had received the drafts for collection having meanwhile failed. In this case the parties collecting the drafts had deposited the proceeds with the defendant, who claimed to hold them

as against their advances, and the court sustained the right of the bank so to do. The court held in this case that the test is, " Was the draft received for collection merely, or to be credited to plaintiff when received, whether collected or not ?" *Prima facie,* they say, the legal title passed. This goes to establish the defendant's first ground of claim to this draft. In *Warner* v. *Lee,* (2 *Seld.* 144,) the court held that the circumstances of the case were notice to the defendant, which would prevent his retaining the proceeds of the note, and that the defendant had made no advances. The facts in the present case are far different. *Scott* v. *The Ocean Bank,* (23 *N. Y. Rep.* 289,) is a case of a transfer of a bill to secure a precedent debt and not credited till after payment, and is unlike the present case. In *McBride* v. *Farmers' Bank,* (26 *N. Y. Rep.* 450,) it was held that the defendants could not retain the proceeds of the collections, because they had parted with nothing—given no value—no credit on the strength of it; and leaving it fairly inferable that had the facts been different, as they are in our case, the rule would have been different. (This case will also be found in 25 *Barbour,* 657, where the same rules are laid down.) The last case in the Court of Appeals is that of *The Commercial Bank of Clyde* v. *The Marine Bank,* (1 *Transcript Appeals,* 302.) This follows the ruling of the other cases above cited. It will be observed at page 303 of the case, " that, upon the trial, the plaintiff asked the court to charge the jury that, unless the defendant gave Lee & Co. some new credit, or made advances, or parted with some value on the credit of the Crocker draft, the plaintiff was entitled to recover, which was refused." A verdict was rendered for the defendant, and reversed by the Court of Appeals, not precisely because of the above error in the charge. But we claim that the above request to charge represents the law as established in the above cases, and as applicable to the facts of the present case. In *Dickerson* v. *Wason,* (48 *Barb.* 415,) the same question arose, inci-

Lindauer *v.* Fourth National Bank of New York.

dentally, before the general term of this court, and the intimation there is decidedly in favor of the defendant's position. It may, perhaps, be claimed that the case of *West* v. *American Ex. Bank*, (44 *Barb.* 175,) is authority against the defendant. It is, in some respects, like the present; but it will be observed in the head note and decision, that the court expressly put the plaintiff's right to recover upon the ground that "it is not found that the defendants paid said drafts upon the credit or faith of the note in question, or of its proceeds;" and citing *McBride* v. *The Farmers' Bank*, (26 *N. Y. Rep.* 450,) they say, "without this, the subsequent advances are insufficient to sustain the defendant's claim." Now, in the present case, it is in evidence, uncontradicted, that the defendant did make advances upon the faith of this draft, and therefore the case does not apply.

V. It will be noted, that the memorandum accompanying the draft "for collection and advice," obviously means that inasmuch as it was a gold draft it was necessary that the remitting bank should be advised of its collection, and the premium in gold when paid, otherwise they could not, as in the case of a currency draft, tell what amount to enter in their books. It will also be borne in mind that in the cases cited, the advices as to remittances were by letter, and could be at length. Here the advices were by telegram, and the defendant's action was predicated upon their reasonable intendment, as justified by subsequent facts. Telegrams are now considered by the court as of equal force with correspondence. (*Johnson* v. *Clark*, *N. Y. Transcript*, *Nov.* 26, 1868.)

VI. It will be also observed by reference to schedule 3, that between 7th May, date of first telegram, and 11th May, the time when this remittance was received, inclusive, the defendant had received, including this draft, $121,028.19, and had paid $138,051.82, so that it *had*

in reliance on these telegrams, and on the faith of this and the other remittances parted with value, paid $17,000 *more* than it had received, (corroborating the witness' testimony,) and showing that the referee erred when he found that the defendant had made no advances upon the said bill of exchange, or upon the credit thereof. It must be evident from these cases that the referee was misled as to the effect of the decisions of the Court of Appeals, and that his findings are erroneous. The rule of law as there laid down does not defeat, but establishes, the defendant's right to hold this draft and its proceeds. There is no conflicting evidence. There is but one witness, and he called by the defendant.

VII. But if it should be claimed by the plaintiff that the defendant on the 11th May received $60,000, and paid but $13,500, and cannot, therefore, hold the proceeds of this draft as against the $13,500 paid, we reply : 1. That the defendant *had* a right to apply the draft as against the $13,500 paid, and that the plaintiff, a stranger, cannot dictate how it should elect to apply it, when the party remitting gave no directions. 2. That the defendant had a right to apply all above the $13,500 to the prior indebtedness of the New Orleans bank, and to insist on applying this draft and such other of the remittances of that day as it pleased, to that day's advances. It had a right to apply it to the most precarious security. (2 *Parsons*, 632.) 3. That the defendant had a right to say, as it did say in effect, " We will not pay any more of your drafts unless you not only furnish us the funds so to do, but also pay something towards the liquidation of your balances already due," and that they receive the $60,000 on that understanding and promise. 4. That they could, and therefore did, say on that day : " We have received $60,000 from you, and have applied it in payment of the drafts of this day, (May 11,) and have applied the rest upon your former balance.

*Samuel A. Noyes,* for the respondent. I. Upon the facts alleged in the complaint, and admitted or not denied by the answer, and *especially* upon proving (what is admitted) that the draft was delivered to the defendant *for collection,* the plaintiff is entitled to judgment, whether the defendant advanced on the draft or not. (*Warner* v. *Lee,* 6 *N. Y. Rep.* 144. *West* v. *Am. Ex. Bank,* 44 *Barb.* 175.) 1. The letter inclosing the draft to the defendant, and the indorsement on the draft itself, clearly show that it was forwarded to the defendant and received by it *for collection.* 2. The referee has found that the draft was forwarded to the defendant *for collection,* and his finding is fully supported by the evidence. 3. The fourth finding of the referee aforesaid is not excepted to by the defendant, and it is bound by it as correct.

II. Now if, as the defendant claims, it was on May 7th, 8th and 9th, 1867, telegraphed that remittances were on the way, and on and after May 7th, paid out checks and drafts of the First National Bank of New Orleans, relying on those remittances to arrive, and yet when this gold draft with other drafts arrived on the morning of May 11, 1867, with notice that it was sent *for collection,* the defendant can only hold such remittances, if any, when they arrive, as belong to the First National Bank of New Orleans.

III. The First National Bank of New Orleans never did pledge by telegram, and had no power to pledge in any way, what never belonged to it.

IV. The defendant never advanced on this draft, or on the faith or credit of it or its proceeds. The defendant's acts, as testified to, show just the contrary. 1. The referee has so found, and his finding is fully supported by the evidence. 2. The defendant credited the proceeds of this draft *separately,* in a gold account, in a *separate book* from all other debits and credits of the First National Bank of New Orleans. 3. The defendant never charged *any drafts, paid any discounts* or *advances* of any kind against this

draft or its proceeds.   4. All the drafts or checks of the First National Bank of New Orleans, paid by the defendant May 11, 1867, or previously, and every other charge against the First National Bank of New Orleans—*all* are charged against other remittances from the First National Bank of New Orleans, as shown in "Ex. No. 3." 5. The defendant's cashier (Seaman) testified that the proceeds of the draft were *never credited* to the First National Bank of New Orleans, in "Ex. No. 3," which is a copy of the account rendered by the defendant to the First National Bank of New Orleans, or its receiver.

V. All the authorities agree, that to justify a creditor bank in withholding paper received under the circumstances disclosed in this case, a credit must have been given, or an advance made on the strength of the *particular paper* in question, or its proceeds. (*West* v. *Am. Ex. Bank,* 44 *Barb.* 175. *McBride* v. *Farmers' Bank,* 25 *id.* 661. 26 *N. Y. Rep.* 453, 454.) It is absurd to suppose that the defendant ever gave any credit or made any advance on the faith of this draft, for it never *even knew* that this draft *existed* until it arrived on May 11, 1867, and on that day (Saturday, May 11, 1867, the last day on which the defendant paid any drafts or checks of the First National Bank of New Orleans) the defendant received $61,130, and only paid out and advanced $13,578.

VI. The defendant has been *fully paid* for all advances to the First National Bank of New Orleans, after and including the morning of May 7, 1867, when the first telegram was received.   1. Subsequent to the morning of May 7, 1867, the date when the first telegram was received, the defendant received, as appears by its account with the First National Bank of New Orleans, $161,187.11, and paid out, on and after May 7, 1867, $156,804.76. Commencing May 7, 1867, the defendant received $161,187.11; paid out, $156,804.76; leaving a balance of $4,382.35. 2. The above shows that the defendant received $4,382.35

more than it paid out, on and after May 7, 1867. 3. The defendant, in addition to the above surplus, received, over and above what it paid out, $1200 in gold, not included in Ex. No. 3.

VII. The agreement between the defendant and the First National Bank of New Orleans, that the defendant should hold all collection paper or its proceeds as collateral for the overdrafts of the First National Bank of New Orleans, does not in any way justify the defendant in holding this draft or its proceeds. It is in no way an advance upon the draft. (*West* v. *Am. Ex. Bank,* 44 *Barb.* 175. *McBride* v. *Farmers' Bank,* 26 *N. Y. Rep.* 453, 454.)

It is therefore submitted that it has been clearly shown:

1st. That as soon as the defendant *even knew of the existence* of this draft, it had notice of the plaintiff's title, and that it was sent to it for collection only.

2d. That the defendant has never given any credit or made any advance upon this draft, or upon the faith and credit thereof.

3d. That even conceding (which we do not) that the defendant has made an advance upon the faith and credit of this draft, it has been fully paid and satisfied for every advance.

The judgment is in all respects correct, and should be affirmed.

GEO. G. BARNARD, J. The defendant had no title to the draft in question that enables it to retain the money it received thereon, as against the true owner. It was sent to the defendant for collection, and was received by it for collection only. That the First National Bank of New Orleans, the bank which sent the paper for collection, had overdrawn its account and had telegraphed that remittances were on the way, by force of which the defendant continued to pay its drafts, can make no difference. The draft did not belong to the New Orleans bank. The New

Orleans bank did not claim to own it, never transferred it to the defendant or attempted to transfer it. The defendant advanced no money—gave no credit on this draft. The remittances referred to in the telegraphic dispatches, to the extent of over $60,000, did come, and the defendant received them. In the same package came the plaintiff's gold draft, for collection. It was on the remittances of the Bank of New Orleans—its own funds—that the credit was given, and not on the plaintiff's demand expressly sent for collection. The judgment should be affirmed, with costs.

CARDOZO, J., concurred.

CLERKE, P. J. The decisions of the United States courts, upon the question involved in this case, have never been countenanced by the courts of this State. The principle laid down in *McBride* v. *The Farmers' Bank of Salem, Ohio,* (26 *N. Y. Rep.* 450,) disposes of this case. A bank, receiving from another negotiable paper for collection, obtains no better title to it, or the proceeds, than the remitting bank had, unless it becomes a purchaser for value, or makes new advances on the faith of it, without notice of any defect of title; and it does not become such purchaser, or make such advances, by reason of its having a balance against the remitting bank, for which it had refrained from drawing, or from having made further advances after the receipt of the negotiable paper, in reliance upon a course of dealing between the banks, without any special reference to it.

In this case the referee finds that the defendant made no advance to the First National Bank of New Orleans upon this bill of exchange, or upon the credit of it.

The judgment should be affirmed, with costs.

Judgment affirmed.

[NEW YORK GENERAL TERM, June 7, 1869. *Clerke, Geo. G. Barnard* and *Cardozo,* Justices.]