THE CORN EXCHANGE BANK, Appellant, *v.* THE FARMERS' NATIONAL BANK OF LANCASTER, PENNSYLVANIA, Respondent.

M. drew a check on defendant, a Pennsylvania bank, with which she had an account, payable to the order of C., and mailed it to him at Indianapolis; C. indorsed it in blank and delivered it to the H. bank for collection. The H. bank indorsed the check "for collection" and forwarded it to plaintiff, its correspondent bank in New York, "for credit;" it was received and credited to the H. bank in general account, plaintiff reserving the right to charge it back if dishonored. It did not appear that plaintiff knew or suspected that the H. bank was acting simply as a collecting agent. Plaintiff indorsed the check the day it was received "for collection and remittance," mailed it to defendant, with directions to remit by draft payable in New York city. Defendant received the check the next day, charged it to M.'s account and cancelled it, and on the same day mailed to plaintiff its draft payable to plaintiff's order on a bank in New York city for the amount, less a charge made against plaintiff for the services. The H. bank having failed, M., the drawer of the check, and C., the payee, after the check had been so paid and cancelled and the draft mailed to plaintiff, but before it was presented for payment, requested defendant to stop payment, which it did, and the draft on presentation was dishonored. In an action upon the draft, *held* (BRADLEY and BROWN, JJ., dissenting), that plaintiff was entitled to recover; that the check of M. having been charged to the account of the drawer and cancelled, and a draft therefor delivered to plaintiff, defendant had

legally discharged its duty to the drawer and was released from liability thereon; that it could not thereafter assert, as against plaintiff, who was its principal, the legal rights or equities of a third person; that neither plaintiff nor defendant was an agent for C.; and conceding the latter could maintain an action against plaintiff to recover the amount of the check, as to which, *quære*, this was not available to defendant as a defense, as no contract relation existed between it and C., nor was there any privity between them.

(Argued October 30, 1889; decided February 25, 1890.)

APPEAL from judgment of the General Term of the Supreme Court in the first judicial department, entered upon an order made December 31, 1886, which affirmed a judgment in favor of defendants entered on a decision of the court on trial without a jury.

This action was brought upon a draft drawn by defendant, payable to plaintiff's order, payment of which was refused by the bank.

The material facts are stated in the opinion.

*John M. Bowers* for appellant. The defendant cannot set up the claim of a third party, where it is not affected by such claim. (*City Bank* v. *Perkins*, 29 N. Y. 554; *McKay* v. *Draper*, 27 id. 256; *Aubery* v. *Fiske*, 36 id. 47; *Hayes* v. *Southgate*, 10 Hun, 511; 74 N. Y. 486; *Freeman* v. *Falconer*, 12 J. & S. 132; *Whiting* v. *City Bank*, 77 N. Y. 363; *McGiffin* v. *Baird*, 62 id. 329; *O'Brien* v. *Jones*, 91 id. 193; *Brown* v. *Thayer*, 12 Gray, 1; *Gray* v. *Johnson*, L. R. [3 H. L.] 1; *Case* v. *Hall*, 24 Wend. 102; *King* v. *Oser*, 4 Duer, 431; *Rogers* v. *Crandall*, 26 Hun, 388.) The plaintiff, having made advances in good faith on the credit of the check for which the draft in suit was issued, without notice of any defect in the title, can assert its claim to the same against the original owner. (*C. I. Works* v. *A. E. N. Bank*, 34 Hun, 26; *McBride* v. *F. Bank*, 26 N. Y. 450; *Commercial Bank* v. *Marine Bank*, 1 Trans. App. 302; *S. L. & S. F. R. Co.* v. *Johnston*, 27 Fed. Rep. 243; *Cragie* v. *Hadley*, 99 N. Y. 131; *A. C. Bank* v. *Hughes*, 17 Wend. 94; *M. N. Bank* v. *Lloyd*, 90 N. Y. 530.)

*Jefferson Clark*, for respondent. The fact is proved without contradiction that Cameron never parted with his title to the check, but delivered it to the Harrisons only for collection. The Harrisons having indorsed it to plaintiff expressly for collection, plaintiff held it only as agent for that purpose, and had no other interest in it. (*Potter* v. *Merchants' Bank*, 28 N. Y. 641; *Van Amee* v. *Bank of Troy*, 8 Barb. 312; *Dickerson* v. *Wasson*, 47 N. Y. 439.) The fact that the proceeds of the check, instead of having been paid to plaintiff in current money, took the form of a draft payable to plaintiff's order, cannot, upon principle or authority, make any difference as to the right to those proceeds. (*Sickles* v. *Gillies*, 3 J. & S. 14; *Barker* v. *Prentice*, 6 Mass. 430; *Comstock* v. *Hoag*, 5 Wend. 600; *M. Nat. Bank* v. *Lloyd*, 90 N. Y. 530.) It is clear that plaintiff does not stand in the position of a purchaser for value of the check in question. (*N. P. Bank* v. *Seaboard Bank*, 114 N. Y. 28.) Defendant, by receiving and retaining the check and returning it to the drawer, became indebted to the owner of the check in the amount named in it. (*People* v. *M. & M. Bank*, 78 N. Y. 272, 273.)

FOLLETT, Ch. J. In July, 1884, Mary C. Melson resided at Lancaster, Pa., where the Farmers' National Bank, of Lancaster, was located, with which she kept an account. July 9, 1884, she drew a check on this bank for $1,871.84, payable to John J. Cameron, or order, and mailed it to him at Indianapolis, Ind., who, July 15, 1884, indorsed it in blank and delivered it to a firm of private bankers doing business at Indianapolis, under the name of "Harrisons' Bank." The check, though indorsed in blank, was in fact delivered and received for the purpose of collection only. The Corn Exchange Bank was the New York city correspondent of Harrisons' Bank, and they exchanged collections and kept mutual accounts, Harrisons' Bank being accustomed to draw sight bills or checks against its balance with the Corn Exchange Bank. The view we take of this case makes it unnecessary to further consider the manner in which these accounts had pre-

viously been kept. July 15, 1884, Harrisons' Bank indorsed the check to the Corn Exchange Bank for collection and credit, and forwarded it by mail. It was received July seventeenth, and credited by the Corn Exchange Bank to Harrisons' Bank; reserving, however, the right to charge it to Harrisons' Bank if it should be dishonored. It was not found by the court, nor was it asserted that the Corn Exchange Bank knew, or had the slightest reason to suspect, that Harrisons' Bank did not own the check, and was acting only as a collecting agent for Cameron, or some undisclosed owner, and so the Corn Exchange Bank became the holder of the check in good faith, and could, had it been dishonored, have maintained an action thereon for its collection. July seventeenth, the Corn Exchange Bank indorsed the check "for collection and remittance" to the Farmers' National Bank of Lancaster, the drawee, with directions to remit by draft payable in the city of New York. July eighteenth, the check was received by the Farmers' National Bank of Lancaster, was charged to the account of the drawer, Mary C. Melson, and cancelled. For this service the Farmers' National Bank of Lancaster charged the Corn Exchange Bank $1.84, and on the same day drew its check or sight draft, payable to the Corn Exchange Bank, or order, on the First National Bank of New York, for $1,870, and mailed it to the Corn Exchange Bank. The check was no longer a valid contract. The liability of the drawer and indorsers thereon was ended, and could never be restored. The Lancaster Bank had legally, and in good faith, discharged its duty to the drawer, the indorsers and the holder of the check, and the Corn Exchange Bank had accepted of the draft of the Lancaster bank in discharge of the liability of the drawer and indorsers. The Lancaster bank accepted of the agency tendered by the Corn Exchange Bank, performed the services and received payment therefor. The relation of principal and agent was established, and in discharge of its liability thus assumed the Lancaster bank mailed the draft. July 17, 1884, Harrisons' Bank failed, and on the eighteenth, but after the check had been paid and cancelled and the draft given in pay-

ment mailed, the drawer ef the check, Mary C. Melson, and the payee, John J. Cameron, requested the Lancaster bank to stop payment of its draft, which it did, and the draft was dishonored. The Corn Exchange Bank brings this action to recover the amount of the draft, which the Lancaster bank defends on the ground that the plaintiff did not hold the check for value, and is not entitled to its proceeds as against John J. Cameron, the payee. The defense is not placed on the ground that it is necessary to protect the defendant from any present or future liability, for it is conceded that it has exactly performed all of its duties in respect to the check. It does not deny that it became the agent, for a consideration, of the Corn Exchange Bank, and promised by its draft to pay the plaintiff $1,870.

By the law of this state Harrisons' Bank was the agent for Cameron, but neither the plaintiff nor defendant was his agent, and had either neglected to take the necessary steps to collect the check, to Cameron's injury, he would have had no right of action against either; but would have had a cause of action against Harrisons' Bank. (*Allen* v. *Merchants' Bank*, 22 Wend. 215; *Montgomery County Bank* v. *Albany City Bank*, 7 N. Y. 459; *Commercial Bank of Penn.* v. *Union Bank*, 11 id. 203; *Ayrault* v. *Pacific Bank*, 47 id. 570; *Exchange Nat. Bank of Pittsburgh* v. *Third National Bank*, 112 U. S. 276; Morse on Banks, [3d ed.] § 272.) In *Montgomery Co. Bank* v. *Albany City Bank*, the plaintiff indorsed and sent a draft to the Albany City Bank for collection, which, in turn, indorsed and sent it to the Bank of the State of New York for collection; but the latter bank negligently omitted to present the draft for payment, and the drawer and indorsers were discharged. The plaintiff sued both banks and recovered against both at Circuit, and the judgment was affirmed by the General Term; but it was reversed in the Court of Appeals as to the Bank of the State of New York, and affirmed as to the Albany City Bank. It was said: "The New York State Bank was the agent directly guilty of the neglect. That bank was employed to do the service by the plaintiff's agent, the Albany City Bank, as its agent, to which it was alone responsible for its

acts and nelect, and for which the latter, according to the settled rule, was alone responsible to the plaintiff, there being no agreement to the contrary, expressed or implied."

It is unnecessary to specially consider the cases which were decided in this state prior to *Allen* v. *Merchants' Bank, supra,* or those of states in which it is held that the bank receiving payment of the paper is the agent of the owner, notwithstanding it may have passed through several banks before reaching the bank making the collection.

The ground upon which the defendant seeks to justify the refusal to perform its contract with its principal seems to be that if the plaintiff recives the money, it ought to pay it to John J. Cameron, but may not, and, therefore, this defense.

Assuming, but not deciding, that Cameron could maintain an action against the Corn Exchange Bank to recover the amount of the check, such fact would in no wise support this defendant's contention. No contract relation exists between it and Cameron, nor is there any privity between them.

When the owner of commerical paper delivers it for collection to bank A, which forwards it for collection to bank B, which, in turn, forwards it for collection to bank C, to which it is paid, it has been held that if bank C, instead of paying the money to bank B, retains and applies it on a debt due from bank B, the owner (bank A being insolvent) may recover of bank C; but we are unable to see that these cases justify this defendant in resisting the payment of its draft, to which it has no defense, for the benefit of a third person, who may have a right to recover the money represented by it.

The check which the defendant received from the plaintiff having been paid, charged to the account of the drawee and surrendered, the account closed, and a draft therefor delivered to the Corn Exchange Bank, the defendant can not now assert as against its principal the legal rights or equities of a third person. (*McKay* v. *Draper,* 27 N. Y. 256; *Aubery* v. *Fiske,* 36 id. 47; Wharton on Agency, § 242 and cases there cited.)

The judgment should be reversed and a new trial granted, with costs to abide the event.

Bradley, J. (dissenting). I am unable to concur with the majority of the court in the result or reasons given for it.

The check drawn by Mrs. Melson on the defendant was indorsed in blank by Cameron, the payee, and left with the Harrisons, the Indianapolis bankers, for collection. They indorsed it to the plaintiff's cashier for collection, and sent the check to the plaintiff, their correspondent in the city of New York, and the latter in like manner indorsed it to the cashier of the defendant, and sent the check to him with directions to remit to the plaintiff its proceeds in New York city funds. This was received · by the defendant on July eighteenth, and on the same day it drew its draft on the First National Bank of New York for the amount, less exchange, and mailed it to the plaintiff. The Harrisons failed and suspended payment on July seventeenth, and immediately after hearing of such failure, and on July nineteenth, Cameron requested the defendant not to pay it, and afterward, before the defendant's draft was presented, requested the defendant to stop its payment, and thereupon, on the last named day, the defendant notified the bank on which its draft was drawn not to pay the draft, and asked the plaintiff to hold it. It was, however, afterward presented to the drawee, and payment being refused, the draft was protested for non-payment. This action was brought on that draft, and the question is whether the facts so stated constitute a defense. They clearly would not if the plaintiff had taken the apparent and actual title to the check and become a holder of it in good faith for value, because the indorsement in blank by the payee apparently operated as a transfer of the check to the Harrisons. But the plaintiff parted with nothing on the faith of the check. While the letter in which it was received by the plaintiff, stated that it was inclosed for credit, the indorsement made upon the check by the Harrisons was restrictive and purported that it was sent to the plaintiff for collection. And it appears that this portion of the letter preceded the statement of the remittance and was printed and was the ordinary form of the letters of the Harrisons in which all their transmissions of paper to the plaintiff were made. That

fact may, in view of the manner that the indorsement was made, deny to that formal portion of the letter the significance which it might otherwise have had. But it has no essential importance upon the question here, inasmuch as the plaintiff advanced nothing upon the check. The plaintiff had for many years had an account current with the Harrisons arising from remittances of paper from each to the other for collection and credit of the proceeds, and the latter from time to time drew drafts upon the former. When the check was received by the plaintiff, the amount of it was credited to the Harrisons in such account, and, after the protest of the draft, was charged back to them in accordance with the course of dealing, as understood between those parties, that if paper received and credited was not paid it should be placed to the debit of the party sending it.

The check having been placed in Harrisons' hands for collection, the plaintiff, by crediting them with it in general account, acquired no title to it as against Cameron, the payee. His was the right to reclaim the check, or to obtain its proceeds if paid, or to stop its payment by the defendant to any party other than a holder in good faith for value, which position the plaintiff did not have. (*Dickerson* v. *Wason*, 47 N. Y. 439; *Warner* v. *Lee*, 6 id. 144; *Commercial Bank* v. *Marine Bank*, 1 Abb. Ct. App. Dec. 405; *Farmers' M. N. Bank* v. *King*, 57 Penn. St. 202.) The question now arises whether the situation in which the defendant was placed or its relation assumed to the plaintiff, was such as to deny to it the right to make the defense which it sought to make in this action. Treating the defendant as a mere volunteer in the denial of its liability upon the draft, it clearly could not defeat a recovery. It could not in such case question the title of the plaintiff. That was the principle of the case of *City Bank of New Haven* v. *Perkins* (29 N. Y. 554); *McKay* v. *Draper* (27 id. 256); *Aubrey* v. *Fiske* (36 id. 47); *Hays* v. *Hathorn* (74 id. 486), cited by the defendant's counsel, and the same may be said of the other cases cited by him on the question of the right of the defendant to defend the action. The disability

may arise out of the relation which one party assumes to another, whom he represents, and between whom in some sense that of principal and agent exists, and the latter may not be liable to third persons, but to his principal only, while the relation exists; nor can the party who undertakes to perform a duty assumed to another, when called upon for performance set up by way of relief from liability to do so, the right in a third party with whom he is not connected and with whom he has personally no concern upon the subject (*Montgomery Co. Bank* v. *Albany City Bank*, 7 N. Y. 459); but that is not this case. The payee of the check never parted with the title to it. The Harrisons were employed by him to collect it, and the plaintiff was employed by them to aid in the accomplishment of the purpose for which it was left with them by the payee. The latter had a right to step in and intercept the check in the hands of any party other than a holder in good faith for value and reclaim it as his property, and in like manner to interrupt the transmission of the proceeds of it to the Harrisons and recover them. This right of the owner is within the doctrine of the *Commercial Bank* and *Dickerson* cases before cited. And the cause for its attempted exercise was the insolvency of the Harrisons. The check had then been charged by the defendant to the drawer, and the draft as directed by the plaintiff had been mailed to it by the defendant. The latter had discharged its duty to both the drawer and the plaintiff, and nothing remained for it to do toward the accomplishment of the purpose for which the check was drawn and transmitted through the plaintiff to the defendant. The fund was represented by the draft, which the defendant had mailed to the plaintiff. The draft was the means by which the proceeds of the check were sent on their way to the destination contemplated when the check was left with the Indianapolis bankers, and they belonged to Cameron, its payee. He as such owner having the right to step in and control their destination and thus countermand the authority which he had given to the Harrisons to receive the proceeds of the check, with that view requested the defendant to act for him and stay the funds from the

hands of the plaintiff by stopping the payment of the draft so forwarded to it. This was done, and in doing so the defendant represented him. The facts justifying his right to do so supported the action of the defendant, and afforded to it a defense in the plaintiff's action upon the draft, unless the defendant by its relation to the plaintiff was disabled from acting upon the request and direction of the owner of the fund. The situation presented by the facts, was, that the Harrisons were the agents of the payee of the check and the plaintiff was their agent to aid in its collection, and by the latter the defendant was called upon for its payment. The direction of Cameron to stop the payment to the plaintiff, operated as a revocation of the agency he had set in motion and to stay, at the then stage of their progress, the means which had been adopted for its execution. It was unimportant for that purpose and such effect that the defendant had issued and forwarded its draft. The direction which he had the right to give and the defendant, in view of the facts, had the right to observe, was that the latter should not pay his money to the plaintiff, who as against Cameron and his direction had no right to it. And thus was afforded to the defendant a defense founded upon the right of Cameron and his authority or requirement. The question would have been no different if the defendant's messenger had been on his way with the funds to the plaintiff, and his mission had been countermanded before handing over the money to the latter. The draft sent was a mere transmission in that form of the apparent liability of the defendant to pay, upon which the plaintiff probably may have realized but for the interruption caused by the direction given to the drawee of the draft not to pay it. It follows that the defendant was justified in asserting that the plaintiff had no right to the fund represented by the draft, as effectually as Cameron could have done if he had been interpleaded as a party defendant. (*Comstock* v. *Hoag*, 5 Wend. 600; *Herrick* v. *Carman*, 10 Johns. 224; *Barker* v. *Prentiss*, 6 Mass. 430.) And in view of the facts found by the trial court, and as before stated, it is unnecessary to further consider the state of account

between the plaintiff and the Harrisons, as it is quite unimportant on which side of it the balance was, since the credit of the check to the latter was on general account, and no advance was made to them on account of the check. (*McBride* v. *Farmers' Bank*, 26 N. Y. 450; *Lindauer* v. *Fourth Nat. Bank*, 55 Barb. 75; *Dod* v. *Fourth Nat. Bank*, 59 id. 265.) In *Montgomery County Bank* v. *Albany City Bank*, the question was as to whom the correspondent of another, who had received commercial paper for collection and sent it to him for a like purpose, was liable for failure or neglect to perform the duty assumed to charge the indorsers. It involved no consideration having relation to the fund when collected, and is not in conflict with the later cases to the effect that the beneficial owner of the proceeds of the paper when collected may effectually assert his right to the fund as against any party receiving it in the execution of the agency. It is said in the prevailing opinion in the present case, that if the check had been dishonored the Corn Exchange Bank could have maintained an action upon it. Assuming that, if not interrupted by the payee, it may have been so, it is wholly without importance upon any question in this case. But against whom could this action be supported? Certainly not against the defendant without its acceptance of the check. (*Attorney-General* v. *Continental L. Ins. Co.*, 71 N. Y. 325.) Nor against Cameron, the payee and indorser, because he was the beneficial owner of it. Nor against Harrisons, the plaintiff's principal. And a further reason why plaintiff could have maintained no action in its own name upon the check is that it took no apparent title. The purpose of the indorsement by the Harrisons, as expressed in it, was that it was made to the plaintiff for collection of the check. This restriction denied to the plaintiff the apparent title, and it had none in fact, to support any action in its name upon the check. (Daniels on Neg. Inst., §§ 698, 699; *White* v. *Nat. Bank*, 102 U. S. 658; *Sigourney* v. *Lloyd*, 8 Barn. & C. 622; *Hook* v. *Pratt*, 78 N. Y. 371.) The purpose of the suggestion that the defendant charged the plaintiff $1.84 for the draft is not apparent.

If, however, it was made to show a consideration between the parties for the draft issued by the defendant, it may be added that this amount retained by the defendant was taken from the proceeds of the check for exchange, which was legitimately within the expense of collection of the check in the usual course for that purpose, and the amount of the draft was so much less than that of the check. It seems to be without significance for any purpose in this action.

I think the judgment should be affirmed.

All concur with FOLLETT, Ch. J., except BRADLEY and BROWN, JJ., dissenting, and HAIGHT, J., not sitting.

Judgment reversed.