ROBERT D. CASTLE, Appellant, *v.* CORN EXCHANGE BANK, Respondent.

*Title of a bank receiving paper for collection — action for conversion — demand — when necessary, when unnecessary — by whom a demand must be made.*

A bank receiving from another bank, notes, checks or drafts for collection, obtains no better title to them or the proceeds thereof than the remitting bank had, unless it becomes the purchaser thereof for value without notice of any defect in the title to them.

When one comes lawfully into possession of property, in order that an action may lie against him for conversion, a demand is necessary, but when the original

taking or possession was wrongful, no demand is necessary; and although one may come lawfully into possession of property, yet, if after notice of the rights of the true owner and regardless thereof, dominion and ownership is asserted, then a demand is not necessary.

Before an action for conversion can be maintained, the person sought to be held must either by his own act or the act of the owner of the property, be placed in the wrong.

To constitute a conversion there must be a claim of ownership as against the true owner, or in a case where the property has come lawfully into the possession of another, there must be a demand for its return by the owner or his authorized agent.

A demand by a third person who has no relation to or does not stand in privity with the owner is insufficient.

APPEAL by the plaintiff, Robert D. Castle, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the city and county of New York on the 5th day of May, 1893, upon the verdict of a jury rendered by direction of the court, after a trial at the New York Circuit, and also from an order entered in said clerk's office on the 3d day of May, 1893, denying the defendant's motion to set aside the verdict and for a new trial made upon the minutes.

This action was brought to recover damages for the conversion of a bill of exchange or draft, drawn by the Farmers' National Bank of Lancaster, Penn., on the First National Bank of New York, and payable to the order of defendant's cashier, by whom it was indorsed in blank.

The history of the draft is as follows: In July, 1884, Mary C. Melson, as executrix, drew a check on the Farmers' National Bank to the order of John J. Cameron of Indianapolis, for $1,871.84, and caused the same to be delivered to Cameron, who delivered it, indorsed in blank, to the firm of A. & J. C. S. Harrison, then doing business at Indianapolis as bankers under the name of Harrison's Bank.

It was delivered to the Harrisons and received by them for collection. It was not credited as a deposit in Cameron's pass book, but between him and the Harrisons it was plainly agreed that the indorsement and delivery were for collection only. Cameron received no consideration for the check. The Harrisons indorsed the check " for collection " to defendant's cashier, and sent the same by mail to defendant with that indorsement, with a printed letter

stating " we inclose for credit," and mentioning this and other items .inclosed with it.

On receipt of the check defendant sent it to the cashier of the Farmers' National Bank indorsed " for collection," whereupon the Farmers' National Bank drew the draft in question and sent it to defendant in exchange for the check and canceled the check. While this draft was on its way to defendant, Cameron learned of the failure of Harrison's Bank, and immediately telegraphed Mrs. Melson to stop collection of the check. Mrs. Melson thereupon went to the Farmers' Bank, and there learning that the draft in question had been mailed to defendant, telegraphed defendant,. informing it of the failure of Harrison's Bank, and that the check had been left with them for collection, and asking defendant to hold the money on the draft, assuming that the draft might already have been collected. To this defendant replied, stating that it was the owner of the draft. Thereupon, acting in pursuance of Cameron's instructions to stop payment of his check, the cashier of the Farmers' Bank telegraphed defendant, asking it to hold the draft, to which defendant replied : " Cannot, draft which it paid for was our property." Thereupon, in pursuance of the same instructions, the cashier of the Farmers' Bank requested the First National Bank by telegraph to refuse payment of the draft, which request was complied with.

Defendant thereupon took steps to collect on the draft from the Farmers' National Bank, the drawer, by commencing suit and attaching money of the drawer in the First National Bank to an amount sufficient to pay the draft and costs of action, and the money so attached was paid over under the attachment to the sheriff, who converted the money to his own use and absconded. Thereupon Cameron assigned to plaintiff the check and draft and all causes of action which accrued against the defendant upon the foregoing facts.

*Jefferson Clark*, for the appellant.

*John M. Bowers*, for the respondent.

O'BRIEN, J. :

The facts here are substantially the same as those appearing upon the former appeal in the case of *Corn Exchange Bank* v. *Farmers'*

*National Bank* (118 N. Y. 445). Though the title to the draft or its proceeds which is the subject of this action was there involved, the question was not decided, because it was therein held that neither the plaintiff nor defendant in that action was the agent of the owner, and conceding that the latter could maintain an action against plaintiff to recover the amount of the check, this was not available to defendant as a defense, as "no contract relation existed between it and the owner, nor was there any privity between them."

Acting, no doubt, upon the intimation thus given, this action was brought by the assignee of the one claiming to own the draft to recover damages for the conversion thereof. Here the evidence showed that the plaintiff's assignor delivered the check, which was subsequently canceled, and for which the draft involved in this action was substituted, for collection. And as no evidence was offered on the part of the defendant tending to show that it parted with any value upon the faith of the receipt of such draft, the question of its ownership as having received the same for value does not arise. In determining whether the direction was right, therefore, we can assume that the law as laid down in the case of *McBride* v. *Farmers' Bank of Salem, Ohio* (26 N. Y. 450), which has been cited with approval in numerous cases, is authority for the proposition that a bank receiving from another, notes, checks or drafts for collection, obtains no better title to them or the proceeds than the remitting bank had, unless it becomes a purchaser for value without notice of any defect of title. As the defendant does not claim to stand in the position of such a holder for value, it would follow that, unless there is some obstacle to the maintenance of the action, the plaintiff could recover.

There are three grounds relied upon to defeat such a recovery, only one of which we think need be considered.

The facts show that the defendant came lawfully into possession of the draft, charged with the duty, as between it and the party from whom it was received, of collecting it. The original check received for which the draft was substituted, as said by Mr. Justice FOLLETT, in *C. E. Bank* v. *F. N. Bank* (*supra*), "was no longer a valid contract. The liability of the drawer and indorsers thereon was ended, and could never be restored. The Lancaster bank had legally and in good faith discharged its duty to the drawer, the

indorsers and the holder of the check, and the Corn Exchange Bank had accepted of the draft of the Lancaster bank in discharge of the liability of the drawer and indorsers."

Therefore, the bank having come rightfully in possession of the draft, and having rightfully proceeded to enforce its collection, the question presented is, whether the plaintiff can maintain this action without showing that he or his assignor, claiming to own the draft or the proceeds, made a demand before suit brought.

The plaintiff appears to have been impressed by the importance of a demand, because in the complaint, after reciting the facts, it is alleged : " That on said day, and before such presentation of said draft, all authority of defendant to collect the same was duly countermanded and revoked, and said Cameron thereupon duly demanded that defendant at once deliver to him said draft theretofore indorsed in blank as aforesaid."

We have examined the record and can find no proof in support of this portion of the complaint. There is no testimony of the plaintiff's assignor, nor of anyone else on his behalf, showing a demand of the draft.

In view of the authorities, we must regard it as settled law that one who comes lawfully in possession of property is not liable for conversion until after demand and refusal. (*Gillet* v. *Roberts*, 57 N. Y. 28 ; 2 Bouv. Inst. §§ 3530, 3531, 3528.) In the last section (3528) it is said : " When the conversion is direct, as by an unlegal taking under a wrongful assumption of property, or a misuse of the chattel, we have seen that the conversion is complete without a demand ; but to maintain trover for an indirect conversion, a demand is in general indispensable, because the defendant being lawfully in possession of the goods, there is no conversion before he assumes a property in them." To the same effect is the American and English Encyclopædia of Law (Vol. 4, title " Conversion," p. 115), which not only confirms the rule as stated by Bouvier, but cites the case of *Storm* v. *Livingston* (6 Johns. 44) as authority for its statement that the demand must be made before the action is brought.

The two cases relied upon by the plaintiff to show that no demand is necessary seems to us to have been ill chosen. One, that of *McBride* v. *Farmers' Bank*, from which we have quoted *supra*, is authority for the position that one to whom the right of action was

assigned could maintain the action without demand; but this was placed expressly upon the ground that, the assignor having demanded the note before maturity and the proceeds afterwards, the cause of action was thus complete and no new demand necessary. *McKee* v. *Judd* (12 N. Y. 622), which is the other case cited by appellant, was an action for the wrongful taking and conversion of personal property, and it was therein held that in such an action no demand or refusal was necessary to maintain the action.

Another and a stronger position taken by appellant to obviate the necessity of a demand is, that though the original possession by defendant was lawful and a demand to place it in the wrong would have been necessary, yet, it appearing that the defendant assumed ownership and converted the draft and proceeds to its own use, this was such an unwarranted and unjustifiable position as to do away with the necessity of a demand.

While it may be stated as a general proposition that where one comes lawfully in possession of property, in order that an action may lie against him for conversion, a demand is necessary, and also that where the original taking or possession was wrongful, no demand is necessary, there is still authority for the further position that though one may come lawfully into possession of property, if, after notice of the rights of the true owner and regardless thereof, dominion and ownership is asserted, then demand is not necessary. Or, as held in *Boyce* v. *Brockway* (31 N. Y. 490): "Where the assumption of dominion over property is in hostility to the rights of the true owner, such assumption amounts in law to a conversion. To maintain an action for the wrongful conversion of property, it is enough that the rightful owner has been deprived of it by the unauthorized act of another assuming dominion over it."

The principle underlying these different instances of when conversion will lie is the same in all, requiring that before an action for conversion can be maintained the person sought to be held shall, either by his own act or the act of the owner of the property, be placed in the wrong. Applying this principle, we think that the evidence in this case is clearly insufficient to justify the inference that the defendant, in the absence of any demand, was placed in the wrong. In other words, we do not think that the testimony tended to prove *that the defendant was guilty of conversion.*

The only evidence that could be tortured into a demand, or assigned as supporting the theory of a conversion, is a telegraphic correspondence passing between defendant and the maker of the check and the Farmers' National Bank. The first of these telegrams sent by the maker of the check simply requested the defendant to hold the money on the draft in suit, stating that the bank to which it had been delivered for collection had suspended. In this we find no demand for the draft, either on her behalf or on that of any other person. The other dispatch was sent by the Farmers' National Bank and reads: "Can you hold our draft on 1st N. Y. sent yesterday. The drawer and indorser would like to have the money held for their account." This but asks the defendant to hold the draft, and contains in addition a statement that the drawer and indorser would like to have the money held for their account. But here, again, no demand for the draft was made, nor is there any reference to the ownership claimed by plaintiff's assignor.

We think it appears, therefore, that no demand was ever made by plaintiff's assignor, or by any person authorized by her to make such demand. It is true that the defendant, in answer to one of the telegrams, stated that it claimed the draft as its own. This cannot be taken as a refusal after demand by the owner, when demand was never made, because as against both the persons sending the draft it was the duty of the defendant, a duty which he owed to its principal, who had sent the original check to it, to enforce the payment of the draft which was substituted therefor, and it can hardly be claimed that asserting a claim as against the drawers, or proceeding to collect the draft, which it was its duty to do, was conclusive as between it and the true owner of a conversion of the draft or its proceeds.

To constitute conversion there must be a claim of ownership asserted against the true owner, or in a case where the property has come lawfully into the possession of another, there must be a demand for its return by the owner or his authorized agent. A demand by a third person, who has no relation to, or does not stand in privity with, the owner, is not sufficient.

In our opinion, as the defendant was never placed in the wrong, and never had any demand of it by the righful owner, the action for conversion would not lie, and the evidence, as it stood at the close of

the trial, justified the direction of a verdict in defendant's favor, if, upon no other ground, upon this ground alone.

We think that the direction was right, and that the judgment appealed from should be affirmed, with costs.

VAN BRUNT, P. J., and PARKER, J., concurred.

Judgment affirmed, with costs.