## NATIONAL EXCH. BANK OF DALLAS *v.* BEAL, (two cases.)

*(Circuit Court, D. Massachusetts. May 4, 1892.)*

### Nos. 2,978, 2,979.

**1. BANKS—COLLECTIONS—DRAFTS—RIGHTS OF OWNER—SPECIFIC PROCEEDS.**
   A bank which had received a draft for collection sent it to its correspondent bank at the residence of the drawee, and the draft was paid to such correspondent. There were no mutual accounts between the two banks, but it was the custom of the correspondent to remit the proceeds of collections at stated periods. *Held* that, until this remittance was made, or the principal bank had given the original owner of the draft credit for the avails, the original owner of the draft, as the owner of the proceeds thereof, was entitled to recover them from the correspondent bank

**2. SAME—PAYMENT—DEBTOR AND CREDITOR.**
   Though the correspondent was the agent of the first bank, and payment to it was to that extent a payment to the principal, yet until the proceeds were actually remitted to such principal, and mingled with its general funds, or were so credited, the owner of the draft had the option to decline to consider it his debtor, and to claim the proceeds in the hands of the agent.

**3. SAME—INSOLVENCY—LIABILITY OF RECEIVER.**
   Where the principal fails, and a receiver is appointed, he takes the proceeds of the draft, when remitted to him, subject to the same right of reclamation by the owner that the latter had as against the agent.

**4. SAME—SET-OFF—PARTIES.**
   Where, in such a case, there are mutual accounts between the two banks, the right of the agent to set off the amount of the collection against the principal's indebtedness to it cannot be adjudicated in a suit in equity between the owner of the draft and the principal without making such agent a party.

In Equity.

It appears from the allegations of the bill that plaintiff sent to the Maverick Bank two drafts for collection and credit on general account,

payable, one in Fall River and the other in Taunton, and the Maverick Bank sent the first to the Massasoit Bank, at Fall River, for collection and credit, and the other to the Taunton National Bank at Taunton, and on October 31, 1891, the Massasoit Bank and the Taunton Bank collected the two drafts, and credited their amount to the Maverick Bank, and mailed letters to the Maverick Bank stating that they had done so. October 31st was the last day that the Maverick Bank did business, it being taken charge of the next day by a national bank examiner, and closed, by the direction of the comptroller of the currency. The letters written by the Massasoit Bank and the Taunton Bank did not, therefore, arrive until after the failure, and consequently no entry of credit on account of these drafts was made by the Maverick Bank to the plaintiff. At the close of business on October 31st there was a balance on general account, including this draft, due from the Massasoit National Bank to the Maverick Bank, of $144.04, which was subsequently set off against collections made for the Massasoit Bank by the defendant as receiver of the Maverick Bank. The Taunton Bank had no mutual account with the Maverick Bank, and was in the habit of remitting the proceeds of paper sent it by the Maverick Bank for collection every five days, and sent a check for the amount of the draft collected by them to the receiver. The usage between the plaintiff and the Maverick Bank, as set forth in the bills, was that the Maverick Bank credited the amounts of drafts sent it by the plaintiff for collection on the day the same were collected on general account, and did not keep the proceeds of such drafts separate, but mingled them with its funds, and this was done with the knowledge of the plaintiff. The plaintiff files these bills, claiming to be entitled to receive from the receiver the amount of these two drafts in full.

*Ropes, Gray & Loring,* for complainant.

*Hutchins & Wheeler,* for defendant.

PUTNAM, Circuit Judge. These two cases were submitted together on bill and demurrer. If the opinion of Judge COLT, handed down in this court March 11, 1892, in *Bank* v. *Beal,* 49 Fed. Rep. 606, had been to the same point as now arises, I would be bound by it; but it was not. It, however, states a rule which is useful here, as follows:

"When payment was made and credit given, it seems to me the Maverick Bank ceased to be agent of the complainant, and the relationship between the two became that of debtor and creditor."

In *Commercial Nat. Bank* v. *Hamilton Nat. Bank,* 42 Fed. Rep. 880, Judge GRESHAM seems to have expressed the opinion that, notwithstanding credit given by a collecting agent having the same relations which the Maverick National Bank has to this case, the primary owner might make claim against the subordinate agent until the subordinate agent had actually remitted; but I am concluded by the rule laid down by Judge COLT, and, as I state further on, the cases at bar do not require any consideration of the conclusions of Judge GRESHAM on this particular point. The facts in No. 2,978, in which payment was made to the Taunton National Bank, are in the simplest form for the preservation of

complainant's title to the bill or draft and its proceeds, and for the application of the principles which seem to me to underlie these suits. In that case there were no mutual accounts between the local bank and the Maverick; so that, after payment to the former, the proceeds were held by it free from any equities of its own, and segregated throughout from all other transactions. Consequently the owner, whoever the owner might be, could have identified and followed the avails as easily as he could have identified or followed the draft or bill itself. In this case, No. 2,978, the fact that the indorsements on the draft or bill were made expressly "for collection" did not change the nature of the transaction, and are of no value; although, whenever claims of strangers intervene, or, indeed, whenever the state of accounts between the collecting bank and its subordinate correspondent is such as to be concerned in the transaction, the notice given by this special and limited phraseology may be of importance. That the draft or bill, when received by the Taunton National Bank, and until paid by the acceptor, or other person on whom drawn, remained the property of the complainant, cannot be successfully disputed; and it is also an elementary principle that the proceeds, so long as they remained with that bank, and were segregated and unmistakably identified, as in the present case, stood presumably in lieu of the collection paper, and were held by the same ownership and title. If, therefore, the respondent claims that in No. 2,978 the complainant has not the same title to the proceeds as it had to the draft, or that its right is less than that of a manufacturer to pursue and reclaim his consigned goods, or the accounts due for them, through the hands of the commission merchant or other factor, into the hands of or from the agents or customers of the latter, the burden is on him to show the special facts which justify the distinction. For these he must look, if anywhere, to the rule given by Judge COLT, already quoted.

The nature of these transactions has been fixed by a practice so extensive, uniform, and long continued that the courts must take cognizance that, when the proceeds of collections have been actually received into the vaults of a bank bearing the relation to the primary owner of the collection paper which the Maverick National Bank bore to the complainant, and have been credited by the former to the latter, the agency ceases, the avails can no longer be traced. or claimed as trust assets, and the matter is merged into one of mere debit and credit. Whether or not. when the proceeds are so clearly identified and so free from new equities as in No. 2,978, the primary owner does not have the option of treating the intermediate bank as its creditor, or of demanding from the local bank the avails, so long as the latter continues to hold them, it is not now necessary to consider. It is enough for the present that, so far as the rule already quoted from Judge COLT concerns this case, the complainant is affected only by the state of accounts between it and its immediate correspondent; and its title to the paper, or its proceeds, is not prejudiced by the mere fact that some other bank holds either as the immediate agent of the complainant's correspondent, until the latter has by suitable entries on its books completed and recognized the relation-

ship of creditor and debtor. Until this is accomplished, the rights of the complainant are no less than those of the manufacturer already spoken of, who might pursue the price of his goods into the hands of the factor's vendee, although the latter had made himself in fact and in form primarily the debtor of the middleman.

What is the ultimate limit to which the *spes recuperandi* may reach it is not necessary now to decide, and it may vary according to special circumstances of differing cases; but that, in the present instance, it continued until the proceeds had actually been remitted by the Taunton National Bank, or were at least so entered by the Maverick to complainant in the usual course of business that the right of complainant as creditor was absolutely and fully recognized, as well as fixed, seems to be implied in what was said by Judge COLT, and appears to me to be the correct rule. No intervening rights are prejudiced by sustaining complainant's claim for the avails of the draft collected by the Taunton National Bank, and, therefore, none need be considered so far as concerns No. 2,978. *Exchange Nat. Bank of Pittsburgh* v. *Third Nat. Bank of New York*, 112 U. S. 276, 5 Sup. Ct. Rep. 141, and the earlier case of *Hoover* v. *Wise*, 91 U. S. 308, are conclusive on this court, to the effect that in this transaction the Taunton National Bank was the agent of the Maverick, and that the latter would have been responsible for any insolvency or lack of diligence of the former, although the complainant knew when it forwarded the bill or draft to the Maverick that it must transmit the same to Taunton for collection, and although the bank at Taunton exercised an independent occupation, and was not a mere servant of the Maverick. The respondent claims that, as the relations of the bank at Taunton to the Maverick are thus defined by the supreme court, the money, when collected at Taunton, became at once the money of the Maverick, in fact and in contemplation of law; so that from the moment of payment to the local bank the Maverick became a debtor to the complainant, and the complainant was entitled to all the rights of a creditor. It is to be noticed that this proposition was not passed on by the supreme court, but is sought to be built up from what it did decide. It must be admitted that the right of the complainant was not concluded by the mere fact that the Maverick became from a certain instant its debtor, if it did; because the question still remains the leading one in the case, whether, notwithstanding that fact, the complainant did not retain an option to decline to regard the Maverick as its debtor, and in lieu thereof to look to the proceeds of its draft, wherever it might find them. By analogy, the factor who sells goods on a guaranty commission becomes the debtor of the manufacturer from the instant the goods are sold; and yet it must be conceded that the latter has the choice of declining to accept the credit, and of making claim to the account held by the vendor against his customer. It seems to me the case turns on the proposition that, while it must be admitted that the avails of goods or of choses in action, when they come in fact into the hands of a bank or factor authorized to deal with them, are thus so mingled with the mass of assets as to lose their ear-marks, yet they preserve their identity so long as they remain

in the possession of a subordinate party, whether he be technically vendee, bailee, or agent, unless, from a peculiar course of dealing or state of facts, the proceeds have necessarily lost their identity in the hands of the latter. Therefore the law sustains the just result that at the close of business on the 31st day of October the proceeds of this draft, then lying in the hands of the Taunton National Bank, might have been recovered from it by the complainant. Before there was any change in the *status*,—that is, before the opening of business on the next secular day,—the statutory insolvency of the Maverick National Bank had been declared; so that at the instant of this declaration the avails of the draft were still subject to reclamation by the primary owner. The receiver, like an assignee in bankruptcy, took only the mere equities of the insolvent bank, and holds by relation whatever he did take as of the 1st day of November, 1891, in behalf of whom it may concern, and as trustee for all interests as they then existed. My conclusions with reference to this case —No. 2,978—seem to be in harmony with all the decisions in the other circuits. Had they not been so, yet, inasmuch as the latter have been uniformly in favor of the rule claimed by the complainant, I would have felt constrained to follow them; and the result would have been the same. I have not attempted to scrutinize with strictness the allegations of the bill, but have assumed them to be in harmony with the settled practice between banks of deposit to which the case must ultimately conform, because the allegations must be construed in connection with those things of which the court necessarily takes judicial notice. Neither have I considered whether the appropriate remedy is not at law, because the counsel for each party expressed at the hearing a desire that no point of jurisdiction should be taken, and my doubts on this do not require me to challenge, of my own motion, the apparent course of practice to which these bills conform.

As to case No. 2,979, in which the sub-agent was the Massasoit National Bank, it seems to me that, until this bank is made a party, it is not proper to adjudicate whether it can maintain the offset which it has attempted, whether the remedy of the complainant is against it for all except $144.04, or against the receiver, if it has any remedy at all, or whether or not the rule of *Freeman's Nat. Bank* v. *National Tube-Works* 151 Mass. 413, 24 N. E. Rep. 779, or that of *Commercial Nat. Bank* v. *Hamilton Nat. Bank*, already cited, applies, or even to adjudicate at all. If this was an action at law, it might, perhaps, on the principles applied in No. 2,978, be maintained for the item of $144.04; but in equity it does not seem suitable to thus split up a controversy. In No. 2,979, there will be a decree sustaining the demurrer, and dismissing the bill, with costs, unless the Massasoit National Bank is brought in by amendment filed on or before the June rules next; and in No. 2,978 the demurrer is overruled, and the defendant ordered to plead or answer on or before the same June rules, the costs to abide the final decree.