### IRWIN *v.* REEVES PULLEY COMPANY.

[No. 2,286.    Filed Nov. 19, 1897.    Rehearing denied April 29, 1898.]

BANKS AND BANKING.— *Collections.— Default of Correspondent.—*A bank in accepting for collection a draft payable at a distant bank is only bound to the exercise of reasonable skill and ordinary diligence in selecting its correspondents and making the collection, and is not liable for the default of a correspondent, where due care was exercised in the selection of such correspondent.

From the Bartholomew Circuit Court.    *Reversed.*

*Simeon Stansifer and Charles S. Baker,* **for appellant.**

*George W. Cooper* and *Cassius B. Cooper,* **for appellee.**

HENLEY, J.—The question for determination in this cause is this: Did the appellant in accepting for collection, in the ordinary course of business, the draft delivered to it by appellee, guarantee the solvency of the intermediate banks through which the said draft passed before it was finally presented to the drawee, and paid?

It appears from the record that on the 10th day of July, 1893, appellee delivered to appellant, who was engaged in the general banking business at Columbus, Indiana, a draft for collection. This draft was drawn upon the Baker Iron Works of Los Angeles, California, was for the sum of $414.25, and was made payable to the order of appellee. At the time of the delivery of the draft to appellant, appellee indorsed it as follows: "Pay to W. G. Irwin, or order, for collection. Reeves Pulley Co." Appellant, not having a correspondent in Los Angeles, transmitted the draft to its regular correspondent at Indianapolis, Indiana, the Indianapolis National Bank, for collection, indorsing the said draft as follows: "Pay E. E. Rexford, Cas., or order, for collection, and credit Irwin's Bank of Columbus, Indiana. W. G. Irwin, Cashier." Upon receipt of the draft from appellant, the Indianapolis National Bank transmitted it for collection to its correspondent at Los Angeles, California, by the following indorsement: "Pay State Loan & Trust Company or order, for collection, for the Indianapolis National Bank, Indianapolis, Indiana. E. E. Rexford, Cashier." The State Loan & Trust Company presented the draft to the drawee and received

Irwin *v.* Reeves Pulley Company.

the full amount called for by it.   Thus, it will be observed that in the usual course of business, the draft was presented to the drawee and paid.  At the time the draft was so paid to the State Loan & Trust Company, the Indianapolis National Bank was indebted to said Trust Company in an amount greater than the amount of the draft, and the Trust Company credited the account of the Indianapolis National Bank with the amount so collected, and notified it of that fact.   In the meantime, the Indianapolis National Bank suspended, went into the hands of a receiver, and no money or proceeds from said draft has ever come into the hands of appellant.   It is upon these facts that appellee's complaint is predicated, and upon which he seeks to hold appellant liable for the amount of the draft so deposited with appellant for collection.   It is not shown or attempted to be shown in either paragraph of appellee's complaint, that the appellant was negligent or did not exercise ordinary care in the selection of its correspondents, or that appellant knew, or in the exercise of ordinary care ought to have known of the insolvency of the Indianapolis National Bank, to which appellant, in the ordinary course of business, transmitted the draft in question for collection.   The complaint, then, presents the naked legal proposition, upon the facts averred:  Is the appellant the insurer of the solvency of the Indianapolis National Bank?   The lower court overruled a demurrer to both paragraphs of the complaint.   Appellant excepted, and has assigned the ruling as error to this court.

Appellant answered in three paragraphs.   The first paragraph of answer is as follows:  "Answer.   First paragraph:  For answer to plaintiff's complaint in the above entitled cause, defendant says: That for a long time prior to and on the 10th day of July, 1893, he

has engaged in and doing a general banking business in the city of Columbus, Indiana, under the name and style of 'Irwin's Bank, Columbus, Indiana,' and as a part of said bank's business, as was its custom and course of dealing with all its regular customers, said bank undertook, for the accommodation of its said customers, to transmit, for collection, to banks at other points or places, drafts or other evidences of indebtedness on parties residing at such points or places, without other cost or charge than the expense which defendant would have to pay to the bank making such collections when sent to a point where defendant or its correspondent bank had no correspondent bank; and, when defendant had no correspondent bank at the point or place where collection was to be made, defendant would, unless otherwise directed, in order to save expense to its said customers, send the same to its most convenient correspondent bank, which in turn, had a correspondent bank at the point or place of collection. That prior to and on said 10th day of July, 1893, plaintiff was a regular customer of defendant's said bank, and fully acquainted with defendant's custom and manner of doing business as aforesaid, and had long acquiesced therein; and plaintiff well knew when the draft mentioned in plaintiff's complaint was delivered to said defendant that the same would have to be transmitted to another bank or banks for collection. That on said 10th day of July, 1893, without any other direction, agreement or understanding than that implied from plaintiff's knowledge of and acquiescence in defendant's custom and course of dealing, as aforesaid, and from the knowledge on plaintiff's part that said draft would have to be transmitted to another bank or banks for collection, plaintiff did deliver said draft to defendant's bank to be transmitted for collection in the manner

aforesaid, and to facilitate such collection, indorsed thereon as follows: 'Pay to W. G. Irwin, Cas., or order, for collection.   Reeves Pulley Co.' "

"That defendant had no correspondent bank at Los Angeles, California, the place where the drawee resided and where collection was to be made; and defendant's most convenient correspondent bank, which in turn had a correspondent bank at Los Angeles, California, was the Indianapolis National Bank, at Indianapolis, Indiana; that accordingly and in order to save expense to plaintiff, as aforesaid, defendant transmitted said draft to said Indianapolis National Bank, to be by it transmitted to its correspondent bank at Los Angeles, California, and to facilitate collection thereof, defendant indorsed said draft as follows: 'Pay E. E. Rexford, Cas., or order, for collection, and credit Irwin's Bank, Columbus, Indiana. W. G. Irwin, cashier.' That said Indianapolis National Bank, in turn, at once transmitted said draft to its correspondent bank, the State Loan and Trust Company, a bank doing a general banking business at Los Angeles, California, and to facilitate collection thereof indorsed said draft as follows: 'Pay State Loan and Trust Company, or order, for collection for the Indianapolis National Bank, Indianapolis, Indiana.   E. E. Rexford, cashier.' That said draft was paid to said State Loan and Trust Company on the 19th day of July, 1893, and credited on said day by said bank to said Indianapolis National Bank; that, at the time of said entry and credit upon the books of said State Loan and Trust Company, the said Indianapolis National Bank was its debtor to an amount in excess of the sum so credited; that said Indianapolis National Bank failed and went into the hands of a receiver as insolvent on the 24th day of July, 1893, and notice of said collection and credit, as afore-

said was received by said Indianapolis National Bank on the 26th day of July, 1893. That at the time said draft was transmitted to said Indianapolis National Bank, said bank was generally supposed and reported in banking and commercial circles to be solvent and trustworthy, and defendant had no knowledge or information to the contrary, or reason to believe or suspect otherwise. That said Indianapolis National Bank still remains in the hands of a receiver, with its assets and liabilities yet unascertained; and that said State Loan and Trust Company still retains said sum so collected and credited, and claims the same as its own. Wherefore plaintiff ought not to recover."

Appellant's second paragraph of answer differs from the first in this: That in addition to the facts averred in the first paragraph, it avers that appellant "undertook, for the accommodation of its said customers, and not otherwise, to collect by, transmitting for collection, and not otherwise," and that appellant delivered said draft to appellant "for collection in the manner aforesaid and not otherwise." The third paragraph of appellant's answer is substantially the same as the first, except that it is therein alleged that appellant's custom and course of dealing in undertaking to transmit for collection said draft in the manner in which the same was done, and without charge, to its regular customers, was and is the custom of banks generally, but does not charge appellee with knowledge of the custom.

The lower court sustained a demurrer to each paragraph of appellant's answer. Appellant excepted to the ruling of the court, and has assigned such ruling to this court as error. Appellant refused further to answer the complaint, and upon such refusal the court assessed appellee's damages at $459.10, and rendered judgment in appellee's favor for said amount.

The importance of the question herein involved is, we think, a sufficient excuse for the extended statement of the pleadings. It will be well to consider at the very threshold of the cause, the contention of appellee's counsel, that the question discussed herein is not an open question for this court, the same having been settled in appellee's favor by the Supreme Court of this State. With due regard for the opinion of appellee's learned counsel, the writer is of the opinion that the question presented herein has never been before the Supreme Court of this State for decision. The cases which are cited by appellee's counsel, to sustain their position, are, *Tyson* v. *State Bank*, 6 Blackf. 225; *American Express Co.* v. *Haire*, 21 Ind. 4; *First Nat'l Bank* v. *First Nat'l Bank*, 76 Ind. 561; *Chapman* v. *McCrea*, 63 Ind. 360; *Pollard* v. *Rowland*, 2 Blackf. 22; *Abbott* v. *Smith*, 4 Ind. 452.

In *Tyson* v. *State Bank, supra*, the negligence of the bank in not presenting the bill to the drawee for acceptance or payment was the breach for which the bank was held liable. The court deciding the case, speaking by Sullivan, J., said: "The State Bank, through its branch at Lafayette, agreed with the plaintiff, for a valuable consideration, to collect the bill described in the declaration. The plaintiff confided its interests to the prudence and fidelity of the bank. The defendant made no effort, as we learn from the declaration, to collect the bill. It was not presented to the drawee for acceptance or payment, consequently there was neither protest nor notice of its dishonor. For such negligence, the defendant is responsible to the plaintiff for the damages he has sustained." The cases cited by the court in support of the opinion quoted from are all cited as to this point only.

In *American Express Co.* v. *Haire, supra*, Perkins,

J., speaking for the court, said: "The main question in the cause is: Did the express company become liable to the holders for the amount of the bill on account of the failure to demand its payment on the proper day?" The answer to this question is briefly stated by the syllabus to the case, and covers the whole opinion, as follows: "If an express company receives for collection, for a compensation, a bill of exchange drawn in one state and payable in another, and delivers the same to a notary for demand and protest on the day before such demand and protest should be made, and such notary makes demand and protest one day before the maturity of the bill, whereby the drawers and endorsers are discharged, the acceptor being insolvent, the express company will be liable to the holder for the amount of the bill and interest." In the last mentioned case, the bill of exchange never passed out of the hands of the express company to a correspondent or agent. The notary was the servant of the express company employed by it to fix the liability of the drawer and indorsers. This he failed to do, and on account of his negligence, the express company was held liable to the holder of the bill.

In the case of *First Nat'l Bank* v. *First Nat'l Bank*, *supra*, the question involved in this appeal is not touched upon, but it is held in that case that the owner of a draft deposited for collection could recover the proceeds in the hands of the intermediate bank or subagent, and that "no objection can be successfully made on the ground of want of privity." The court, in sustaining its position, cites Morse on Banks and Banking, an authority confessedly against the position taken by appellee in this cause. The case of *Chapman* v. *McCrea*, *supra*, is almost identical with the case of *Tyson* v. *State Bank, supra*. In *Chapman* v.

*McCrea* the facts were as follows: A promissory note, negotiable under the law merchant as an inland bill of exchange, was deposited before maturity in the bank, where the same was payable, by a *bona fide* indorsee for collection; but, on maturity of the note, which remained unpaid, the bank failed to protest the note and to notify the indorsee of its nonpayment. Shortly afterward the maker was adjudged a bankrupt, and the indorsee sued the bank for damages. It was held that the complaint averring such a state of facts was good upon demurrer. The bank was held for negligence,—a failure to perform a duty. The cases of *Pollard* v. *Rowland, supra,* and *Abbott* v. *Smith, supra,* were both cases where collections were placed in the hands of attorneys, who, without the knowledge or consent of the creditors, placed the collections in the hands of other attorneys. The attorneys with whom the collections were first placed were held liable for the default of the attorneys to whom they had intrusted the business. It will certainly not be contended that if an attorney who receives a note for collection and places the same in the hands of another attorney for collection, with the knowledge and consent of the owner, that the first attorney will be held for the default of the second.

The question presented by this appeal has not been decided by the Supreme Court of this State, but it has held, applying the doctrine to the case at bar, that there is no want of privity between appellee and the State Loan and Trust Company. *First Nat'l Bank* v. *First Nat'l Bank, supra.*

The authorities which hold that the transmitting bank (appellant) is not liable for the default of its correspondents, do so upon the ground that a collecting bank is an agent for transmission to a subagent to collect, and when this is properly done, and the sub-

agent has been selected with reasonable care, its duty is performed and its responsibility is at an end.   Appellee must have known when he deposited the draft, drawn upon a resident of California, with appellant for collection, that appellant's officers could not themselves present the draft to the drawee for acceptance and payment, and appellant became the agent of appellee with full authority to employ the usual and necessary means for the proper execution of the agency.

"It is a general principle that an agent's authority is construed to embrace all the means usual and necessary for its proper execution.   Accordingly, when the agent can show that the instructions of his principal could not have been properly executed without the employment of deputies, he will be warranted in delegating so much of his authority as the character of his agency demands."   1 Am. and Eng. Ency. of Law (2nd ed.) 980; Evans on Agency (Ewell's ed.) 44; Mechem on Agency, section 194; Story on Agency, section 201-214; *Dun* v. *City Nat'l Bank,* 58 Fed. 174; Wright on Agency, 55-56.

There is no conflict of the authorities as to the law of agency as above set forth.   What, then, is its application to the case at bar?   Under the indorsement and delivery of the draft by appellee to appellant, did appellant become the agent of appellee for the collection of the draft?   Was it necessary for the proper execution of this agency, if one was so created, that the agent should employ subagents?   Was appellant charged with knowledge of the necessity of the employment of subagents when he created the agency?   Mechem, in his work on Agency, section 514, says: "The same conflict of authority exists as to the liability of a bank which receives, in the ordinary manner, a note or bill payable at a distant place, and sends it to its correspondent there for collection.   It is well

established in New York that in such a case the correspondent bank is the agent of the bank from which it receives the paper, and not of the depositor or owner of the paper. The transmitting bank is, therefore, liable for the neglect or default of the corresponding bank in making the collection and transmitting the proceeds. This rule prevails, also, in Michigan, Ohio, New Jersey, Montana, Indiana, the supreme court of the United States, and in England. It is based upon the principle that the home bank having undertaken the collection of the paper stands in the attitude of an independent contractor who is left at liberty to select and does select his own agents and correspondents, and is, therefore, liable for their default. But in a majority of the states, however, a different rule prevails, and it is held that the liability of the home bank, in the absence of instructions or an agreement to the contrary, extends merely to the selection of a suitable and competent agent at the place of payment and the transmission of the paper to such agent with proper instructions.  *  *  *  This rule is based upon the theory that from the nature of the case there is implied authority, upon the ground of necessity, for the appointment of a subagent, and that in this, as in other cases, the agent fulfils his duty when he uses due care in the selection of the subagent."

As we have shown, the author of the above quotation is in error so far as the statement concerning the position of the courts of Indiana is concerned, as is also recognized and stated in 3 Am. and Eng. Ency. of Law (2nd. ed), page 811, where it is said: "It is stated in several leading cases upon this subject  *  *  *  that the courts of Indiana have adopted the view that the forwarding bank is liable for the default if its correspondent. And in the cases of *Tyson* v. *State Bank*, 6 Blackf. 225, 38 Am. Dec. 139, and *Amer-*

*ican Express Co.* v. *Haire,* 21 Ind. 4, 83 Am. Dec. 334, are relied upon to support the assertion. In neither of these cases, however, was the point under discussion raised or determined."

Upon the question of the agency of the forwarding bank, the court of appeals of New York, speaking by Mr. Justice Peckham, said: "The indorsement upon each piece of paper was for collection simply, and by virtue of that indorsement no title passed to the firm, but, on the contrary, it became simply the agent of the plaintiff to present the paper, demand payment thereof and remit it." *National Butchers & Drovers' Bank* v. *Hubbell,* 117 N. Y. 384.

In the case of *Dun* v. *City Nat'l Bank,* 58 Fed. 174, the court said: "It appears from the agreement that the services demanded by the principal—the obtaining of information—cannot be rendered by the agent, but must be mainly rendered by subagents. In such cases the agent will not be liable for the negligence or misconduct of his subagent, provided there was no negligence or misconduct in his selection. * * * When the business intrusted to an agent is to be performed at a distance, or requires or justifies the delegation of an agent's authority to a subagent who is not his own servant, the original agent is not liable for the errors or misconduct of the subagent if he has used due care in his selection." To the same effect see *Barnard* v. *Coffin,* 141 Mass. 37. Applying these principles to the case at bar leads to the proper solution of the question presented herein.

"When a draft, payable at a distant place, is left with a bank for collection, it must be presumed that it is intended to be transmitted to a subagent at the place where it is payable, and not that the bank is to employ its own officers to proceed there for the purpose of

obtaining payment." 1 Am. and Eng. Ency. of Law (2nd ed.), 980.

In 1 Morse on Banks and Banking, page 487, it is said: "The parties to a contract are presumed to contract in reference to well established usage, in this particular as in others. The very question is whether the contract to collect can be fairly construed to be, by the understanding of the parties, an agreement that the first bank shall personally or by its servants do the collecting in the distant city, or whether, considering that the usage of trade is universal and well established to send the paper to some correspondent bank entirely independent of the first, and not its servant any more than a lawyer is the servant of his client, and considering that no compensation is taken by the first bank at all commensurate with such a risk as that of loss by negligence of subagents, is it not fairer to construe the contract intended to be simply one of transmission; and if so, then the question arises: Is there good reason on any other ground for extending the liability of the first bank beyond the consequences of its own lack of due care and that of its servants?"

The case of *Guelich* v. *National State Bank*, 56 Iowa 434, 9 N. W. 328, is strongly in point. In the last mentioned case the court said: "The course of business of defendant, and all other banks, is, in such cases, to make collections through correspondents. They do not undertake themselves to collect the bills, but to indorse them to other banks at the place where payment is to be made. The holder of the paper, having full notice of the course of business, must be held to assent thereto. He, therefore, authorizes the bank with whom he deals to do the work of collecting through another bank. * * * The bank receiving

the paper becomes an agent of the depositor with authority to employ another bank to collect it. The second bank becomes the subagent of the customer of the first, for the reason that the customer authorizes the employment of such an agent to make the collection. The paper remains the property of the customer, and is collected for him; the party employed, with his assent, to make the collection, must therefore be regarded as his agent."

The case of *Allen* v. *Merchants' Bank*, 22 Wendell 215, 34 Am. Dec. 289, firmly established the doctrine, contended for by appellee, in the State of New York. The decision was by an almost evenly divided court, fourteen members being upon one side and ten upon the other. Mr. Freeman has this to say of the decision, in a note following the principal case: "The preponderance of authority is against the doctrine of the principal case, and in favor of the rule that the liability of a bank taking a note or bill for collection, which is payable at a distance, extends merely to the selection of a suitable and competent agent at the place of payment, and to the transmission of the paper to such agent with proper instructions, and that the correspondent bank is the agent, not of the transmitting bank, but of the holder, so that the transmitting bank is not liable for the defaults of the correspondent, where due care has been used in making the selection of such correspondent.

The rule adopted in the case of *Allen* v. *Merchants' Bank, supra,* was adopted by the supreme court of the United States in the case of *Hoover* v. *Wise*, 91 U. S. 308, with Justices Miller, Clifford and Bradley dissenting. The same rule was adopted by divided courts in the states of New Jersey and Ohio, and while Michigan has adopted the same rule, an eminent member of the bar of that State, in his valuable work on

Agency takes strong ground against it, and concludes that it is against the great weight of authority in this country. Mechem on Agency, section 514.

We do not believe it necessary to further quote from the decisions sustaining appellant's contention in this cause. The following cases will be found in point and will serve to show the wide range of the authority for the position taken in this opinion.

We thus conclude that the acceptance of the draft to collect only binds the bank to the exercise of reasonable skill and ordinary diligence in making the collection and in the selection of its correspondents. *Merchants, etc., Bank* v. *Stafford National Bank,* 44 Conn. 565; *Fabens* v. *Mercantile Bank,* 23 Pick. (Mass.) 330; *Third Nat'l Bank* v. *Vicksburgh Bank,* 61 Miss. 112; *Guelich* v. *National St. Bank,* 56 Iowa 434; *Bank of Louisville* v. *First Nat'l Bank,* 8 Baxt. 101; *Fifth Nat'l Bank* v. *Ashworth,* 123 Pa. St. 212, 16 Atl. 596; *Hum* v. *Union Bank,* 4 Rob. (La.) 109; *Wilson & Co.* v. *Smith,* 3 How. (U. S.) 763; *Lawrence* v. *Stonington Bank,* 6 Conn. 521; *Warren Bank* v. *Suffolk Bank,* 10 Cush. (Mass.) 582; *Planters', etc., Bank* v. *First Nat'l Bank,* 75 N. C. 534; *Daly* v. *Butchers', etc., Bank,* 56 Mo. 94; *Aetna Ins. Co.* v. *Alton City Bank,* 25 Ill. 221; *Drovers' Nat'l Bank* v. *Anglo-American Packing, etc., Co.,* 117 Ill. 100, 7 N. E. 601; *Stacy* v. *Dane County Bank,* 12 Wis. 629; *Citizens Bank* v. *Howell,* 8 Md. 530; *Merchants' Nat'l Bank* v. *Goodman,* 109 Pa. St. 422, 2 Atl. 687; *Hyde* v. *Planters' Bank,* 8 Rob. (La.) 416; *German Nat'l Bank* v. *Burns,* 12 Colo. 539, 21 Pac. 714; *Bank of Lindsborg* v. *Ober,* 31 Kan. 599, 3 Pac. 324; *Waterloo Milling Co.* v. *Kuenster,* 158 Ill. 259, 41 N. E. 906; *Farmers' Bank* v. *Newland,* 97 Ky. 464, 31 S. W. 38; *First Nat'l Bank* v. *Sprague,* 34 Neb. 318, 51 N. W. 846; *Bank of Washington* v. *Trip-*

*lett,* 1 Pet. 25, decided by Marshall, C. J.; 1 Morse on Banks and Banking (3rd ed.), c. 17; Bolles on Bank Collections, c. 10.

We must conclude, therefore, that when appellee placed the draft in appellant's hands for collection, appellant became the agent of appellee for the collection and transmission of the draft, with implied authority to do whatever was reasonably necessary to accomplish the work; that appellant having exercised reasonable care in the selection of subagents necessarily employed to do the work, and seasonably transmitted the draft through such subagents to the place of payment, his whole duty has been performed.

In the opinion of this court neither paragraph of the complaint states a cause of action against appellant; that the lower court erred in overruling the demurrer to each paragraph of the complaint, that the decision of the lower court is not only against the great weight of authority in this country upon the direct point at issue, but that it is contrary to the commonly accepted mercantile usages and customs, and violates the settled laws as applied to agents. Judgment reversed, with instructions to the lower court to sustain the demurrer to both paragraphs of appellee's complaint.

## ON PETITION FOR REHEARING.

HENLEY, J.—Appellee has filed a petition for a rehearing in this cause, in which it is urged that certain material allegations of the second paragraph of complaint have been ignored by the court. It is claimed by counsel for appellee that the averments of the second paragraph of complaint, viz: that appellant and appellee entered into an agreement by the terms of which appellee, who was a large depositor with appellant, should charge appellant nothing in the way of

interest on the deposits, and that appellant, by reason thereof should charge appellee nothing in excess of the actual expense thereof, for services rendered in the collection of drafts drawn by appellee, make an entirely different case from the case presented by the first paragraph of complaint, and that the cases cited as applicable to the first paragraph of complaint are not in point, when applied to the facts averred in the second paragraph. The well settled principle of agency, that when the business intrusted to an agent is to be performed at a distance, or requires the delegation of an agent's authority to a subagent, the original agent is not liable for the error or misconduct of the subagent, if he has used due care in his selection, is the governing rule in all the cases cited in support of the doctrine announced in the opinion in this cause. The fact that the bank first employed was to receive a consideration for the collection of a foreign draft which the owner knew could be collected only by the transmission to a subagent at the place where it was payable, could not change the rule of agency.

Agents are not presumed to do their work without consideration. If, for a consideration, the appellant had guaranteed the solvency of the subagent employed by him in making appellee's collections, or guaranteed appellee from loss from any reason growing out of the misconduct of subagents employed by appellant in making collections for appellee, an entirely different case would be presented. We see no reason to change the decision of the court. Petition for a rehearing overruled.

## DISSENTING OPINION.

ROBINSON, J.—Believing that the opinion adopted by the majority of the court is contrary to the doctrine laid down by the Supreme Court, that it is opposed to

the great weight of authority in other jurisdictions, and that on principle, the judgment of the lower court should be affirmed, I am constrained to dissent from the conclusion reached.

The question presented by this appeal is, whether a bank in this State, receiving a draft for collection on a drawee at some distant point and undertaking its collection through a number of correspondent banks, is liable to the payee of the draft for the default of any of such correspondents. Are the correspondent banks the agents of the home bank or the agents of the owner of the paper?

The first paragraph of the appellant's answer avers that on the 10th day of July, 1893, he was engaged in the banking business under the name of "Irwin's Bank, Columbus, Indiana," and as was its custom and course of dealing with its regular customers, undertook, for the accommodation of such customers, to transmit for collection to banks at other places, drafts and other evidences of indebtedness without other cost than the expense paid the bank making such collection when sent to a point where appellant or its correspondent bank had no correspondent bank, and when appellant had no correspondent bank at the point or place where collection was to be made, appellant would, unless otherwise directed, send the same to its most convenient correspondent bank, which in turn, had a correspondent bank at the point or place of collection; that appellee knew appellant's method of making collections, and on said day, without any other agreement than that implied by such knowledge, appellee delivered to appellant the draft sued on, and indorsed thereon: "Pay to W. G. Irwin, Cas., or order, for collection.    Reeves Pulley Co.;" that appellant had no correspondent bank in California where the collection was to be made, and that appel-

Irwin *v.* Reeves Pulley Company.

lant's most convenient correspondent bank, which in turn had a correspondent bank in California, was the Indianapolis National Bank at Indianapolis, Indiana; that appellant transmitted said draft to the Indianapolis National Bank to be by it sent to its correspondent bank in California and indorsed the draft as follows: "Pay E. E. Rexford, Cas., or order, for collection, and credit Irwin's Bank, of Columbus, Ind. W. G. Irwin, Cashier." That said Indianapolis National Bank, in turn, sent the draft to its correspondent bank, The State Loan and Trust Company of Los Angeles, California, and indorsed the draft, "Pay State Loan and Trust Company, or order, for collection for the Indianapolis National Bank, Indianapolis, Indiana. E. E. Rexford, Cashier." That said draft was paid to said State Loan and Trust Company on July 19, 1893, and credited on said day by said bank to said Indianapolis National Bank, and that at said time the Indianapolis National Bank was debtor to the State Loan and Trust Company in a sum in excess of the amount of the draft, that said Indianapolis National Bank failed and went into the hands of a receiver as insolvent on the 24th day of July, 1893, and two days later notice of said collection and credit was received by said Indianapolis National Bank; that at the time the draft was sent to the Indianapolis National Bank it was supposed and reputed to be solvent, and appellant had no notice or information to the contrary; that said Indianapolis bank still remains in the hands of a receiver with its assets and liabilities unascertained, and that said State Loan and Trust Company still retains said sum so collected and credited, and claims the same as its own.

The second paragraph differs from the first only in averring that said bank "undertook, for the accommodation of its said customers, and not otherwise, to col-

lect by transmitting for collection, and not otherwise," and that said draft was delivered to defendant "for collection in the manner aforesaid, and not otherwise."

The third paragraph is the same in substance as the first, except it avers defendant's custom and course of dealing in undertaking "to transmit for collection" in the manner and without charge to its regular customers as alleged to be "the custom of banks generally," but omits the direct averment as to plaintiff's acquaintance with the custom. Demurrers to these paragraphs of answer were sustained and these rulings are the only errors assigned.

It is argued by appellant's counsel that the doctrine of the first bank's liability is opposed by the analogies of the law; that the compensation is so manifestly inadequate as to refute an implied assumption of so great a liability; and that by the usages of trade, the usual dealings between parties, and the exigencies of the case, the employment of a subagent to make the collection was authorized by the appellee. In *Pollard* v. *Rowland*, 2 Blackf. 22, Rowland, an attorney, without the knowledge of his client, who had given him for collection a note on a party residing in a county in which Rowland did not practice law, and forty miles distant from Rowland's, employed another attorney to make the collection, the latter being in default, the first attorney was held liable. See, also, *Abbott* v. *Smith*, 4 Ind. 452.

It is evident, from the nature of each of the successive indorsements, that the title to the draft, or to its proceeds, never passed out of the Reeves Pulley Company. The California bank by virtue of the indorsements never acquired any right to the proceeds of the draft. In *Sweeny* v. *Easton*, 1 Wal. 166, in speaking of an indorsement similar to these in the

case at bar, the court said: "The words 'for collection' evidently had a meaning. That meaning was intended to limit the effect which would have been given to the endorsement without them, and warned the party that, contrary to the purpose of a general or blank endorsement, this was not intended to transfer the ownership of the note or its proceeds." *City Bank* v. *Weiss,* 61 Tex. 331, 60 Am. Rep. 29; *Blaine* v. *Bourne,* 11 R. I. 119, 23 Am. Rep. 429; *Bradstreet* v. *Everson,* 72 Pa. St. 124, 13 Am. Rep. 665; *Evansville Bank* v. *German-American Bank,* 155 U. S. 556. It is true, it has been held that a person "acting without reward, except the privilege of using the money, was not bound to use more than ordinary care and was liable for gross negligence only." *Bronnenburg* v. *Charman,* 80 Ind. 475.

In the case at bar the draft was not delivered to appellant to be held in trust for some specific purpose and then returned to appellee. Nor was it delivered to appellant to be by him simply transmitted to the one who was to pay it in California, but the purpose of the delivery and the undertaking by appellant was not only to send the draft to the payer but to return to appellee its proceeds. When appellee delivered and appellant accepted the draft with the indorsement, "Pay to W. G. Irwin, Cashier, or order, for collection. Reeves Pulley Co.," it cannot be said that appellee delivered the draft and appellant accepted it for transmission only. This would be giving to the transaction between the parties an entirely different meaning from that conveyed by the language which they themselves used. It must be concluded that if appellant had intended to undertake only the transmission of the draft it would have been so expressed in the indorsement. From the nature of the transaction between the parties, it is not to be presumed that,

appellee expected to receive the proceeds of the draft from the party owing it, but that the proceeds would be returned through appellant's bank. It is true, the answers plead a custom of banks receiving paper like the draft in question for transmission only, but in determining the sufficiency of the pleading all the facts pleaded must be taken together. The specific allegations of fact, setting out the indorsement, negative the idea that appellant was engaged as a forwarding agent merely. Were it conceded that the custom is well pleaded, it would be inconsistent with the specific allegation setting out the indorsement.

In a note to the case of *Allen* v. *Merchants' Bank,* 22 Wend. 215, 34 Am. Dec. 289, it is said: "Some, however, have seemed to suppose that banks do not undertake such collections, as they do other branches of their business, solely from motives of profit, but as an accommodation of their customers; and that as they have no ownership or interest in the paper collected, the pay is in a measure gratuitous unless extra commissions are charged. From this notion has no doubt sprung the disposition of some courts to hold banks to a less stringent accountability with respect to paper taken for collection than would be enforced against agents for hire generally in the management of the business of their principles. Such a notion, however, is entirely fallacious, as shown in the principal case. Banks are not in this, any more than in any other part of their business, charity institutions. They undertake collections, not from motives of benevolence, but because from long experience they have found it directly or indirectly profitable to do so. If they should find it unprofitable they would cease to perform the service, however advantageous it might be to the world at large. The benefit derived from the use of the money collected for the time that it may be left in

their hands, the extension of their business, and the advantage of settling their accounts with distant banks, without being compelled to send money to and fro between them, by means of collections made in the places where such banks are situated, furnish ample consideration for the undertaking to collect. *Thompson* v. *Bank of South Carolina*, 30 Am. Dec. 354; *Reeves* v. *State Bank of Ohio*, 8 Ohio St. 465; *Titus* v. *Mechanics' National Bank*, 35 N. J. L. 588; 1 Dan. Neg. Inst., section 324."

There is a great conflict of authority on the question as to how far the first bank is to be held liable for the default of a correspondent bank. In the able briefs of counsel for appellant and appellee these cases are collected. There is a direct conflict, and text-writers are as far from agreeing on the question as the courts of the different states. Many of the states follow the courts of Massachusetts, which deny the liability of the bank, while an equally formidable array follow the New York and United States supreme courts, and affirm the bank's liability. The courts of several States follow the Massachusetts rule that the first bank is not liable. These authorities rest on the proposition that as the collection of a draft at a distant point cannot be made by the bank itself through any of its officers, but must be entrusted to a subagent, the holder of the draft impliedly authorizes the bank to employ a subagent, and that the risk of the subagent's neglect is then upon the holder of the draft; and further that the consideration, in the absence of an express or implied agreement for compensation, is inadequate from which to infer a contract to guarantee against loss. Counsel for appellant rely upon the case of *Bank of Washington* v. *Triplett*, 1 Pet. 25, as declaring the rule that the bank with which the note or draft is deposited for collection has no further duty

therewith than to transmit to another bank.    In that case a bill was placed in the hands of a bank in Alexandria for the purpose of being transmitted to a bank in Washington for collection, the Alexandria bank indorsing it in blank for that purpose.    The Alexandria bank wrote a letter at the instance of the owner of the bill notifying the Washington bank how to proceed in the collection of the bill.    In that case suit was brought against the Washington bank and not the Alexandria bank.    In the opinion it is said: "The payees of the bill indorsed it in blank, and delivered it to the cashier of the Mechanics' Bank of Alexandria, for the purpose of being transmitted, through said bank, to a bank in Washington, for collection. * * * The bill was not delivered to the Mechanics' Bank of Alexandria for collection, but for transmission to some bank in Washington, to be collected."

In *Exchange National Bank* v. *Third National Bank*, 112 U. S. 276, the Pittsburg bank discounted, before acceptance, certain drafts and sent them to the New York bank for collection.    The New York bank sent them to its correspondent, the First National Bank of Newark, N. J., for acceptance and collection.    The drafts were drawn on "Walter M. Conger, Sec'y Newark Tea Tray Co., Newark, N. J."    The drafts were presented by the Newark bank to Conger for acceptance, who, except in one instance, accepted them by writing on the face:  "Accepted, payable at the Newark National Banking Co., Walter M. Conger."    There was sufficient time before the time of payment to notify the Pittsburg bank the form of the acceptance and for said bank thereafter to give further instructions as to the form of acceptance.    The Newark bank held the drafts for payment, but the Pittsburg bank was not notified of the form of the acceptance until two of the drafts were returned to it by the New York bank.    At

that time the drawees and indorsers were insolvent, but the drawees were solvent when the drafts were discounted. The drafts were protested for nonpayment, but none of them were paid. Suit was brought by the Pittsburg bank against the New York bank alleging negligence in not obtaining acceptance of the drafts by the Tea Tray Company, or having them protested for non-acceptance by that company, or giving notice of such non-acceptance, and in failing to give notice that the company would not accept the drafts, or that Conger would not accept them in his official capacity. It was earnestly contended that the liability of the New York bank in taking for collection these drafts on a drawee at Newark extended merely to the exercise of due care in the selection of a competent agent at Newark, and to the transmission of the drafts to such agent with proper instructions, and that the Newark bank was the agent of the Pittsburg bank and not the agent of the New York bank, and that due care having been used in selecting the agent the New York bank was not liable. In the opinion, the court said: "The question under consideration was not presented in *Bank of Washington* v. *Triplett,* 1 Pet. 25, for although the defendant bank in that case was held to have contracted directly with the holder of the bill to collect it, the negligence alleged was the negligence of its own officers in the place where the bank was situated.   *   *   *   The agreement of the defendant in this case was to collect the drafts, not merely to transmit them to the Newark bank for collection. This distinction is manifest; and the question presented is, whether the New York bank, first receiving these drafts for collection, is responsible for the loss or damage resulting from the default of its Newark agent. There is no statute or usage or special contract in this case, to qualify or vary the obligation re-

sulting from the deposit of the drafts with the New York bank for collection. On its receipt of the drafts, under these circumstances, an implied undertaking by it arose, to take all necessary measures to make the demands of acceptance necessary to protect the rights of the holder against previous parties to the paper. From the facts found, it is to be inferred that the New York bank took the drafts from the plaintiff, as a customer, in the usual course of business. There are eleven drafts in the case, running through a period of over three months, and the defendant had previously received from the plaintiff two other drafts, acceptances of which it had procured from Conger, at Newark, through the Newark bank. The taking by a bank, from a customer, in the usual course of business, of paper for collection, is sufficient evidence of a valuable consideration for the service. The general profits of the receiving bank from the business between the parties, and the accommodation to the customer, must all be considered together, and form a consideration, in the absence of any controlling facts to the contrary, so that the collection of the paper cannot be regarded as a gratuitous favor. *Smedes* v. *Bank of Utica,* 20 Johns. 372, and 3 Cowen 662; *McKinster* v. *Bank of Utica,* 9 Wend. 46; affirmed in *Bank of Utica* v. *McKinster,* 11 Wend. 473. The contract, then, becomes one to perform certain duties necessary for the collection of the paper and the protection of the holder. The bank is not merely appointed an attorney, authorized to select other agents to collect the paper, its undertaking is to do the thing, and not merely to procure it to be done. In such case, the bank is held to agree to answer for any default in the performance of its contract; and, whether the paper is to be collected in the place where the bank is situated, or at a distance, the contract is to use the proper

means to collect the paper, and the bank, by employing the subagents to perform a part of what it has contracted to do, becomes responsible to its customer."

In *Mackersy* v. *Ramsay*, 9 Cl. & Fin. 818, a bank in Edinburgh was employed to obtain payment of a bill drawn on Calcutta. The Edinburgh bank transmitted the bill to its correspondent in London who forwarded it to a house in Calcutta to whom the bill was paid, but that house having failed the Edinburgh bank was sued and was held liable on the ground that it was an agent to obtain payment of the bill and as payment had been made the bank's principal could not be called on to suffer any loss occasioned by the bank's subagents, between whom and the principal no privity existed. *Van Wart* v. *Woolley*, 3 Barn. & Cr. 439.

In *Titus* v. *Mechanics' National Bank*, 35 N. J. L. 588, the court said: "A dealer who deposits a draft on a distant city, in a bank in his own town, has no choice of their agent or correspondent. It is the business of a bank to provide proper agents or correspondents for this service, when they adopt it, as most banks do, as part of their regular business. If they have no such correspondent, they should refuse to take paper for collection, and then the holder could choose whether he would leave it for transmission. He would then be led to inquire about the agent to whom it would be transmitted. The English and New York rule is much better adapted to the convenient dispatch of business. It is no hardship on the bank; it can always look to its correspondent bank to which transmission is made, for indemnification from its neglect." The following authorities sustain the doctrine that the correspondent bank is the agent of the home bank and not the agent of the owner of the paper. *Davey* v. *Jones*, 42 N. J. L. 28, 36 Am. Rep. 505; *Allen* v. *Merchants Nat'l Bank*, 22 Wend. 215, 34 Am. Dec. 289; *Ayrault*

v. *Pacific Bank*, 47 N. Y. 570, 7 Am. Rep. 489; *Castle v. Corn Exchange Bank*, 148 N. Y. 122, 42 N. E. 518; *St. Nicholas Bank* v. *State Nat'l Bank*, 128 N. Y. 27, 27 N. E. 849; *Naser* v. *First Nat'l Bank*, 116 N. Y. 498, 22 N. E. 1077; *Corn Exch. Bank* v. *Farmers Nat'l Bank*, 118 N. Y. 443, 23 N. E. 923; *Hoover* v. *Wise*, 91 U. S. 308; *German Nat'l Bank* v. *Burns*, 12 Colo. 539, 13 Am. St. 247, 21 Pac. 714; *Nat'l Exch. Bank* v. *Beal*, 50 Fed. 355; *First Nat'l Bank* v. *Craig* (Kan.), 42 Pac. 830; *Thompson* v. *Bank of South Carolina*, 3 Hill 77, 30 Am. Dec. 354; *Power* v. *First Nat'l Bank*, 12 Pac. 597, 6 Mont. 251; *Simpson* v. *Waldby*, 63 Mich. 439, 30 N. W. 199; *Nat'l Citizens Bank* v. *Citizens Nat'l Bank* (N. C.), 25 S. E. 971; *Bailie* v. *Augusta Savings Bank*, 95 Ga. 277, 21 S. E. 717; *Reeves* v. *State Bank*, 8 Ohio St. 465; *Hermann* v. *State Bank*, 10 Ohio St. 446; *Streissguth* v. *Nat'l German-American Bank*, 43 Minn. 50, 44 N. W. 797, 19 Am. St. 213; *Montgomery County Bank* v. *Albany City Bank*, 7 N. Y. 459; *Commercial Bank* v. *Union Bank*, 11 N. Y. 212; Daniel Neg. Inst., sections 324, 342, 344, 345; Rand. Com. Paper, sections 1457, 1458; Edw. Bills and Notes (2nd ed.), 383; Boone on Banking, sections 203, 204, 235.

The liability of a collection agency, to whom had been delivered a bill for collection, for the default of an attorney to whom the agency had sent the bill for collection, was established by a divided court in the case of *Hoover* v. *Wise*, 91 U. S. 308; but the liability of a bank for the default of a correspondent bank was established by a unanimous court in the case of *Exchange National Bank* v. *Third National Bank*, 112 U. S. 276. The United States Circuit and District Courts have approved the same doctrine. *National Exchange Bank* v. *Beal*, 50 Fed. 355. In the case of *Dunn* v.

*City National Bank,* 58 Fed. 174, where a mercantile agency contracted with its subscribers under a written agreement, to communicate, on request, information as to the financial responsibility of merchants and manufacturers and expressly stipulated that the information was to be obtained mainly by subagents of its subscribers whose names were not to be disclosed, and that the "actual verity or correctness of the said information is in no manner guaranteed," it was held that the agency was not liable for loss occasioned to a subscriber by the acts of a subagent in furnishing false information.

Whether there is or is not a want of privity between appellee and the California bank does not affect appellee's rights as against appellant. The authorities seem to be agreed upon the proposition that an indorsement for collection simply does not pass title to the paper so indorsed, and those states which hold the first bank liable follow this doctrine. In the case of the *National, etc., Bank* v. *Hubbell,* 117 N. Y. 384, the court said: "The endorsement upon each piece of paper was for collection simply, and by virtue of that endorsement no title passed to the firm, but, on the contrary, it became simply the agent of the plaintiff to present the paper, demand payment thereof and remit to it. Under such circumstances the title to the paper remained in the party sending it." And as stated above the doctrine of the first bank's liability has long been established in New York. And in *First National Bank* v. *First National Bank,* 76 Ind. 561, it was held that the indorsement of a check for collection did not vest the title to it in the indorsee nor give it any right to the proceeds, and in that case the following doctrine in *Sweeny* v. *Easter,* 1 Wal. 166, is approved: "The words 'for collection' evidently

had a meaning. That meaning was intended to limit the effect which would have been given to the endorsement without them, and warned the party that, contrary to the purpose of a general or blank endorsement, this was not intended to transfer the ownership of the note or its proceeds."

Although the Massachusetts court has strenuously denied the liability of the first bank, yet that court holds that if an agent undertakes to do the work of his principal and employs a subagent to assist him, on his own account, he is answerable to the principal for the wrong-doing of the subagent, although the principal has knowledge of the fact of the employment of the subagent. *Barnard* v. *Coffin*, 141 Mass. 37, 6 N. E. 364. See, also, *Morgan* v. *Tener*, 83 Pa. St. 305; *Bradstreet* v. *Everson*, 72 Pa. St. 124; *Sweet* v. *Southworth*, 125 Mass. 417; *Dyas* v. *Hanson*, 14 Mo. App. 363. And the authorities which approve the Massachusetts doctrine give no good reasons why a bank should be excepted from the well established principle of law that every person is liable for the acts of such agents as he has selected, to transact such business as he has undertaken to transact for others.

Not only do we believe that the doctrine laid down in *Exchange National Bank* v. *Third National Bank, supra*, and in that of the great commercial center, New York, the better doctrine, and that a rule laid down by the highest court in the land upon a question that most frequently arises between persons residing in different states, should govern; but that a different doctrine cannot be declared in our own State without disregarding the adjudications of our own Supreme Court. In *Tyson* v. *State Bank*, 6 Blackf. 225, 38 Am. Dec. 139, a bill was left with a branch of the State Bank of Indiana for collection. The branch bank failed to present the bill either for acceptance or pay-

ment, and in a suit by the indorsee the State Bank was held liable for the damages he had sustained by reason of the failure to present the bill.. It is true, the State Bank undertook to make the collection, but in the opinion it is held: "The State Bank, through one of its branches, having undertaken, for a reasonable reward, to collect the plaintiff's debt, placed itself in the situation of an agent or attorney, who, for reward, undertakes to perform services for another in the line of his business or profession. He is bound to a faithful discharge of his duty, and is responsible to his employer for all damages arising from his neglect."

In approving the doctrine laid down in *Smede* v. *Bank*, 20 Johns. 372, the court, in *Tyson* v. *State Bank, supra*, said: "The court remarked that the custom of receiving notes for collection was not founded on mere courtesy, but with a view to the interests of the institution and was the source from whence profit may and did arise."

It is argued by appellant that *Tyson* v. *State Bank, supra*, although frequently cited in support of the doctrine of the first bank's liability, does not, in fact, so hold. But this question has been decided adversely to appellant's contention in *American Express Co.* v. *Haire*, 21 Ind. 4. In that case the court said: "In *Hoard* v. *Garner*, 3 Sandf. 179, the New York doctrine is stated thus, by Judge Sanford: 'The principle established by *Allen* v. *Merchants' Bank*, 22 Wend. 215, was, that the implied contract of the banker was an undertaking to do the thing itself, and was not the delegation of an agent or authority to procure the thing to be done; that the contract looked mainly to the thing to be done, and his undertaking was for the due use of all proper means for its performance; that it was not a contract only for the immediate services of the agent and his acting faithfully as the represent-

ative of his principal; that in the latter case the responsibility ceases with the limits of the personal services undertaken; in the other it extends to cover all the necessary and proper means for the accomplishment of the object, by whomsoever used or employed.' * * * Ohio follows the line of these decisions. *Reeves & Co.* v. *State Bank*, 8 Ohio St. 465. Indiana has followed the same line of decisions, as applicable to banks; *Tyson* v. *State Bank*, 6 Blackf. 225, and as applicable to attorneys; *Abbott* v. *Smith*, 4 Ind. 452." See *Chapman* v. *McCrea*, 63 Ind. 360; *First National Bank* v. *First National Bank*, 76 Ind. 561. The case of *Tyson* v. *Bank*, *supra*, commits Indiana to the rule that the first bank is liable for the default of its correspondent bank. 1 Morse on Banks and Banking, pp. 472-473, recognizes Indiana as committed to this rule by the cases above referred to. There is no reason on principle why the rule which declares the liability of collection agencies and attorneys for the default of subagents selected by them, should not apply to banks when they undertake to do precisely the same kind of service.

Comstock, J., concurs in the dissenting opinion.

### ON PETITION FOR REHEARING.

ROBINSON, C. J.—In the original opinion of the majority of the court, it is stated at the outset that the question presented for determination is, "Did the appellant, in accepting for collection, in the ordinary course of business, the draft delivered to it by appellee, guarantee the solvency of the intermediate banks through which the said draft passed before it was finally presented to the drawee and paid?" The complaint is in two paragraphs, and the judgment of the trial court is reversed, with instructions to sustain the demurrer to each paragraph of the complaint.

In both the opinion of the court and in the dissenting opinion one fact seems to have been overlooked.

In addition to the facts set out in the original opinion, and upon which it is said the complaint is predicated, the second paragraph contains these averments: "That on said day (July 10, 1893) and for a long time prior thereto, plaintiff had been and then was, a customer of said Irwin's Bank, doing a large amount of business with said bank, including loans, discounts, collections and deposits; that plaintiff for a long time prior to said day was in the habit of carrying large sums of money on deposit in said bank, on which plaintiff was allowed and received no interest; that in consideration of the premises the defendant had, prior to said 10th day of July, 1893, agreed with the plaintiff to make collections of all such claims as might be deposited by plaintiff in said bank for collection, without other charge therefor than the actual cost and expense incurred by said bank in the collection thereof; that, plaintiff's said contract still being in force and unrevoked, on said 10th day of July, 1893, deposited with defendant's said bank for collection their draft," etc.   I think these averments in the complaint make a case different from that stated in the opinion. Here is an express contract between the parties.   In the presence of such a contract, the commonly accepted mercantile usages and customs must give way. The above allegation clearly makes the second paragraph of complaint good.   Where a contract is expressed as here, there is no room to reason out by inference what the agreement was.   The parties themselves have spoken.   Their agreement is expressed in terms.   The consideration is agreed upon.   In view of such facts, a court cannot take the conduct of the parties, and say that they did not mean what they said.

Counsel for appellant have all along insisted, and I understand the original opinion so to hold, that their contract was one for transmission only. But I am unable to see how this can be true, when the second paragraph of complaint alleges an express contract to collect.

Courts denying the liability of the first bank recognize the effect of an express contract. Thus, in Pennsylvania, if a bank receives a reward for collecting, beyond the expense and mere nominal charge for service in forwarding, and employs a Virginia bank to collect the note, the Pennsylvania bank will be responsible for any negligence of the Virginia bank.

The author of Morse on Banks and Banking (3rd ed.), section 269, who so strenuously denies the first bank's liability, recognizes this distinction, and says: "If there is an express contract upon the matter of the first bank's responsibility, of course the question will be governed by it, and if the character of the contract and the consideration is such as to indicate such an interest, the first bank will be held liable, even in those states where upon the ordinary contract it is not held." For the reasons above stated I think the second paragraph of complaint is good, and that the petition for a rehearing should be granted.

Comstock, J., concurs in this dissenting opinion.